(April 12, 1909.)

# HENRY P. KNIGHT, Plaintiff, v. C. M. TRIGG et al., Defendants.

[100 Pac. 1060.]

CONSTITUTIONAL LAW—STATUTE VOID FOR UNCERTAINTY, INDEFINITE-NESS AND INCOMPLETENESS—VOID SECTION DOES NOT AFFECT RE-MAINING STATUTE—VACANCY IN OFFICE—APPOINTMENT TO FILL VACANCY.

1. Sec. 2 of Senate Bill No. 152, entitled, "An act creating the eighth judicial district; providing for the election of a judge thereof; providing for the fixing of the terms of court in said district, and relating to the causes, matters or proceedings pending in said district and empowering the judge of the first judicial district to refix the terms of court in said district for the year 1909, and amending sec. 26 of the Revised Codes of Idaho," approved March 15, 1909, is void and inoperative for indefiniteness, uncertainty and incompleteness.

2. Such indefiniteness, uncertainty and incompleteness consists in the failure of the legislature to designate, point out and provide the procedure for holding the special election that the section attempts to authorize and require, and for the further reason that in the particulars in which it is indefinite, uncertain and incomplete, the general election laws are inapplicable without substantial and material variation and alteration, such as political and ministerial officers would not be justified in attempting to make.

3. The act, Senate Bill No. 152, freed from the inoperative, incomplete and void provisions contained in sec. 2, remains a substantial and complete legislative act, capable of enforcement and execution.

4. Under the provisions of sec. 19, art. 5 of the constitution, a vacancy in the office of a judge of the district court shall be filled in the manner provided by law, and the legislature, by sec. 320 of the Revised Codes, has provided by law that such vacancy shall be filled by appointment by the governor until the next general election.

5. Under the provisions of sec. 317, Revised Codes, every civil office is declared vacant in case an incumbent ceases to reside in the district in which the duties of his office are to be exercised, and under the provisions of that section, the office of district judge becomes vacant upon the creation of an additional district in which no district judge resides.

6. A newly created office which is not filled by the legislative act creating the same, and for which no provision is made by the act for filling the same, becomes vacant on the instant of its creation.

7. Sec. 2 of Senate Bill No. 152, approved March 15, 1909, is not sufficient authority for calling or holding a special election for the election of a district judge in the eighth judicial district, but, on the contrary, it is the duty of the governor, under sec. 19, art. 5 of the constitution, and sec. 320, Revised Codes, to appoint a fit and competent person to fill the vacancy caused by the creation of a new judicial district.

(Syllabus by the court.)

Original application for a writ of mandate. Demurrer to the petition sustained, writ denied and action dismissed.

H. P. Knight, *in propria persona.*

A vacancy may exist when an office is created and no one has been appointed to fill it, and an existing office without an incumbent is vacant, whether it be a new or an old one. (*People v. Opel,* 188 Ill. 194, 58 N. E. 996; *In re Collins,* 16 Misc. Rep. 598, 40 N. Y. Supp. 517; *Commonwealth v. Dickert,* 195 Pa. 234, 45 Atl. 1058; *People v. Rucker,* 5 Colo. 455; *State v. Irwin,* 5 Nev. 111.) A newly created office becomes *ipso facto* vacant in its creation. (*State ex rel. Brown v. McMillan,* 108 Mo. 153, 18 S. W. 784; *Smith v. Askew,* 48 Ark. 82, 2 S. W. 349; *Gormley v. Taylor,* 44 Ga. 76.)

C. H. Potts, for Defendants, files no brief.

AILSHIE, J.—This is an original application for a writ of mandate. The petitioner alleges that he is a resident, citizen and elector of Sherman precinct, county of Kootenai, and that the defendants constitute the board of commissioners of Kootenai county; that a special election has been called by the governor of the state of Idaho, for the election of a judge for the eighth judicial district, as provided for by an act of the legislature entitled, "An act creating the eighth judicial district; providing for the election of a judge thereof; providing for the fixing of the terms of court in said

district, and relating to the causes, matters or proceedings pending in said district and empowering the judge of the first judicial district to refix the terms of court in said district for the year 1909, and amending sec. 26 of the Revised Codes of Idaho,'' approved March 15, 1909; that the election has been called to be held in the counties of Kootenai and Bonner on the 27th day of April, 1909; that the defendants, constituting the board of commissioners of Kootenai county, refuse to furnish the registrar of Sherman precinct the necessary or proper books of registry and the necessary and proper electors' oaths, blank notices, certificates and such other supplies as are needed and required for such registrar to enable him to properly perform the duties of the office of registrar for such precinct.

It is further alleged that the board of commissioners have announced and declared their purpose not to furnish the said registrar with the election registry and necessary certificates and blanks required for registering electors and holding an election, and declare their purpose not to furnish ballot-boxes for holding such special election or election supplies of any kind. Petitioner further alleges that if they fail and refuse to do so, it will be impossible to hold an election as called for by the proclamation of the governor, and that a failure to hold such election will work great and irreparable injury to the citizens of the eighth judicial district, for the reason that it will leave them without a judge in that judicial district. The petitioner prays that a writ of mandate may issue out of this court, commanding and directing the board of commissioners to furnish the registrar with the necessary books of registry and election supplies for the purpose of holding such special election. The county attorney of Kootenai county, concurrently with the filing of this petition, filed a demurrer to the petition alleging that the affidavit and petition does not state facts sufficient to constitute a cause of action authorizing the court to issue writ of mandate or grant any relief thereon. This action is really instituted for the purpose of testing the validity of Senate Bill No. 152, passed by the tenth legislative session, the title to which is above set forth, and which

act was approved by the governor on March 15, 1909. No contention, however, is made as to the sufficiency of the title or as to the validity, meaning and intent of any part of the act, excepting sec. 2 thereof. The real, and, in fact, only question presented to us is as to the meaning, effect and validity of sec. 2 of the act. Sec. 1 creates the eighth judicial district out of the counties of Kootenai and Bonner. Sec. 2 reads as follows:

"The governor shall within 20 days after the passage and approval of this act call a special election to be held in said counties of Kootenai and Bonner, not less than 30 nor more than 40 days from the date of said call, and thereupon the county auditors of said counties of Kootenai and Bonner shall cause publication of said call to be made in not less than three newspapers in each county, once a week for three successive weeks prior to said election. At said election all persons registered as voters at the last general election and such other qualified voters as may offer themselves for registration to the several registrars of said counties prior to the day specified for holding said election, shall be qualified to vote thereat. The several precincts shall be the same as at the last general election; the same polling-places shall be used, and the same judges and clerks shall act, except that in case of a vacancy, the voters present at the opening of the polls may elect a person to fill such vacancy, or the judges present may appoint such person. In other respects, the election shall be conducted, and the votes counted the same as at general elections. The county commissioners of said county shall meet the third day after such election, and transmit to the Secretary of State an abstract of the votes cast, which abstract shall be canvassed by the State Board of Canvassers within three days from receipt thereof, and a certificate of election given to the successful candidate. The ballots used at such election may have printed thereon the names of any nominees who may be proposed by the respective county central committee, or by any other political organization or mass convention. The nomination shall be certified to the county auditors not less than ten days prior to said election. All expenses incurred

in each county in holding said special election shall be audited by the county commissioners of said county, and allowed as a county charge."

Sec. 3 provides that:

"The judge so elected or appointed shall, within 20 days after his election or appointment and qualification," fix the terms of court for his district, etc.

Sec. 4 provides for jurisdiction of all causes pending in the counties of Kootenai and Bonner on the "election or appointment" of a judge, being vested in the eighth judicial district.

Sec. 5 authorizes the judge of the first district to refix the terms of court for the first judicial district, and sec. 6 of the act is an amendment to sec. 26 of the Revised Codes, and re-districts the state into eight judicial districts.

Sec. 2 of the act as above set forth is assailed on various grounds. First, that it authorizes and directs the governor to call a special election to be held in the counties of Kootenai and Bonner in not less than thirty nor more than forty days from the date of his call, but fails to specify or designate any officer or officers to be elected at such election. Second, that it provides no method of selecting or appointing registrars for any precincts from which the registrars may have removed or resigned, or in which vacancies for any cause may have occurred. Third, that it fails to provide a time for the opening of the registration books and fails to designate and specify any day or days on which the registrars shall be at their offices to register voters; that it fails to specify or indicate what persons are meant by "other qualified voters." Fourth, that it fails to provide the procedure for holding and conducting the election. Fifth, that the act nowhere authorizes or directs that an election shall be held for the purpose of electing a district judge for the eighth judicial district.

It is conceded on the argument by both sides that it was probably and most likely the intention of the framer of the act to provide by sec. 2 for calling and holding a special election for the specific purpose of electing a judge for the district created by the act. It is also admitted and conceded by counsel on both sides that the act fails to specifically direct

or authorize the election of a judge, and that it is equally
silent in several material respects with reference to the regis-
tration of electors, the qualification of electors for this election
and holding and conducting the election.

It is contended by counsel for the board of commissioners
that sec. 2 of the act is so indefinite, unintelligible and un-
certain and incomplete as to be void, and that it cannot be
given force or effect by judicial construction or interpre-
tation. It is also contended that the act is complete and op-
erative with this section eliminated, and that it may be given
full force and effect without sec. 2 being incorporated therein.
As to this phase of the proposition we have no doubt. If
sec. 2 cannot be given any force or effect by construction
and interpretation, and should consequently be held void,
the act would still be complete within itself. We think
this act would not come within the rule that where different
provisions of a statute are so interdependent, the one pro-
vision upon the other, that if one provision or section fails
the whole act must fail. The act would be complete, entire
and operative with sec. 2 entirely eliminated. It can hardly
be said that this section, attempting, as it does, to provide for
the calling and holding of a special election,—presumably for
the purpose of electing a judge,—was an inducement for the
passage of the act. It would be going too far to say that the
act could not have passed the legislature with this section as it
is here found entirely excluded from the act.

We would hardly feel justified in holding sec. 2 void on the
ground that it does not specifically designate the officer to be
elected. This omission differs somewhat from the omission
found in the act under consideration in *Holmberg v. Jones,*
7 Ida. 752, 65 Pac. 563. In that case the chief and main
purpose of the act was to create a new county; but the act
utterly failed to do so. It omitted the creating words. In
this case the election was not the main or controlling purpose
of the act. The chief and principal object to be attained was
the creation of a new and additional judicial district so as to
thereby secure the services of an additional judge for the
transaction of public business in the territory designated.

The manner and method of his selection was merely an incident in arriving at the desired end. The fact that the legislature was indifferent as to the method of his selection is accentuated by the provisions found in both secs. 3 and 4, wherein the judge is referred to in the terms: "Elected or appointed" and "election or appointment" and "election, appointment and qualification of said judge." These expressions indicate clearly that the legislature was not wedded to the idea of a special election for the purpose of selecting a judge to preside over the court in the new district. The holding of elections is peculiarly and wholly a matter within the management and control of the political department of government (*Toncray v. Budge,* 14 Ida. 621, 95 Pac. 26), and in order for the ministerial officers to hold and conduct an election, it is necessary that the legislative branch prescribe the manner and method and designate the procedure to be followed; otherwise, the ministerial officers would be involved in uncertainty and doubt, and would necessarily have to assume *quasi*-legislative functions in order to hold the election. This is peculiarly the condition under sec. 2 of this act. In order to hold a special election under its provisions, the officers conducting the same would be obliged to grope about in doubt and uncertainty as to the method to be pursued in various matters of substance. In the first place, the act provides in specific terms that "all persons registered as voters at the last general election" shall be qualified to vote at the special election. Now, it must be apparent at once that a great many, perhaps hundreds, of persons who were registered and qualified to vote at the last general election are not now residents of the county in which they were registered. Under the constitution they would not be entitled to vote. (Sec. 2, art. 6.) This provision would therefore be repugnant to the constitution. The legislature could not authorize persons to vote who have ceased to be citizens of the county and state, even though they be registered. The act also provides that such "other qualified voters as may offer themselves for registration to the several registrars of said counties, prior to the day specified for holding said election, shall be qualified to

vote thereat,'' and at the same time does not undertake to
specify or define the persons meant by ''other qualified
voters.'' Neither does the act indicate to the officers when
they may or shall commence registration, nor does it indicate
to the elector the times or places at which he may apply for
registration. Again, the act does not provide for filling
vacancies in the office of registrars, nor does it provide for
preparing check lists for delivery to the judges of election.
On the other hand, it appears to authorize registration up to
and including the day preceding the election, whereas, the
general election law requires registration to close on Satur-
day before election day. Presumably, transfers might be
taken by the electors at any time up to and including the day
preceding the election, but that leaves no time for transcrib-
ing names and preparing check lists. It will at once be seen
that it is impossible in many respects to apply the general
election laws to this election. This act became a law on
March 15, 1909, and the election is to be held on April 27th.
In the meanwhile the commissioners do not meet in regular
session until April 12th. It is true that they might call a
special session for the purpose of taking such steps as are
necessary to provide for the holding of this election. In
any event there is not nearly so great a space of time inter-
vening between the approval of the act and the holding of
the election as is provided by the general election laws for
the registration of voters and the giving notice of registra-
tion by registrars and many other of the details prescribed
by the general laws to be observed in the holding of a general
election. It is true that the general election law authorizes
the board, if in session, and if not, the chairman, to fill
vacancies in the office of registrars, and this difficulty alone
might be obviated under the general election law. To attempt,
however, to hold an election under the provisions of sec. 2
of this act, would be to undertake the exercise of purely
political and ministerial functions surrounded with much
ambiguity, uncertainty and doubt, and would undoubtedly
entail confusion, dissatisfaction and possibly future litigation.
At the same time, much that would necessarily have to be

done by the election officers in the discharge of the duties of preparing for and holding an election would have to be left to their discretion and judgment, different officers having different views, without any clear or positive legislative enactment to direct them or control their conduct. Under such circumstances we are clearly of the opinion that it is the duty of the court to hold sec. 2 of this act void and inoperative for uncertainty, ambiguity and incompleteness. Under this act one class of persons might be permitted to vote in one precinct and be excluded in another, and in still another persons might be permitted to vote who have ceased to be citizens, while citizens and electors might be denied the right of registration.

The question next arising is this: If there is to be no election for the selection of a judge for the eighth district, when and how is that office to be filled? This is a question that necessarily arises and must be determined, and the sooner it is done the better it will be for the people of the state, and particularly for this district that is now without a judge. By sec. 24 of art. 5 of the constitution, the whole territory comprising the state of Idaho was incorporated within the judicial districts of the state. The district court system and jurisdiction was extended over every part of the territory comprising the state of Idaho. That jurisdiction has never at any time ceased to extend throughout the confines of the state. The legislature in the meanwhile has increased the number of districts and provided for the selection of a judge for each new district, but the district court jurisdiction has always extended throughout the entire state. Sec. 11 of art. 5 of the constitution provides that each district shall have a judge, and sec. 23 of the same article requires that the judge shall be an elector of his district. Sec. 19 of art. 5 of the constitution provides as follows: "All vacancies occurring in the offices provided for by this article of the constitution shall be filled as provided by law." In compliance with the provisions of the foregoing section of the constitution, the legislature has prescribed by sec. 320 of the Revised Codes that: "All vacancies in any state office, and in the supreme

and district courts, unless otherwise provided for by law, shall be filled by appointment by the governor, until the next general election, when such vacancy shall be filled by election.'' Our statute (sec. 317, Rev. Codes) defines what constitutes a vacancy, and reads in part as follows: ''Every civil office shall be vacant upon the happening of either of the following events at any time before the expiration of the term of such office as follows: .... 5. His ceasing to be a resident of the state, district or county in which the duties of his office are to be exercised, or for which he may have been elected. .... '' From this it will be seen that whenever a district judge ceases to be a resident of the district ''in which the duties of his office are to be exercised,'' there at once occurs a vacancy in the office for that district, and from the above reference to the constitution, it will be observed that the judge must be a resident and elector of the district over which he presides. At the time of the passage of Senate Bill No. 152 under consideration, the first judicial district comprised the counties of Kootenai and Bonner, and also the county of Shoshone. The judge of the first district lived in Shoshone county. When Senate Bill No. 152 became a law, there immediately existed two judicial districts comprising the same territory that had formerly comprised only one district. The office of judge of a district court still existed, the same having been established by the constitution, but the eighth district was immediately upon its creation left without a judge, and under the constitution is entitled to a judge. The district judge formerly presiding over that district having ceased to be a resident of the district, a vacancy, therefore, immediately arose in the office of district judge for the territory comprising the eighth district. Under the constitution that office must be filled in the manner prescribed by law. In the absence of the act creating the district providing specifically the manner for filling the office, sec. 320 of the Revised Codes above quoted steps in and provides that the office be filled by appointment by the governor until the next general election. If it had happened that the district judge who was elected for the first judicial district had resided in .the

territory erected into the eighth judicial district, he would have undoubtedly continued to be the judge of the district within which he resided, and it would have consequently left a vacancy in the first district; so it is equally true that his living in the territory described as the first judicial district, leaves the eighth, which was formerly a portion of his old district, without a judge. There is clearly a vacancy in the office of district judge for the eighth judicial district, both within the meaning of sec. 19, art. 5 of the constitution, and within the meaning of subd. 5, sec. 317, of Revised Codes.

It has been repeatedly held by many courts that the word "vacancy" as aptly and fitly applies to and describes the condition of a newly created office, and before it is filled by an incumbent, as it does to an office that has been occupied by a duly elected officer who subsequently died or resigned. As said by the supreme court of New York: "A newly created office which is not filled by the tribunal which created it becomes vacant on the instant of its creation." (*In re Collins,* 16 Misc. Rep. 598, 40 N. Y. Supp. 519. See, also, *Walsh v. Commonwealth,* 89 Pa. 419, 33 Am. Rep. 771; *State v. Maloney,* 108 Tenn. 82, 65 S. W. 871; *State v. Co. Court of Boone Co.,* 50 Mo. 317, 11 Am. Rep. 415; *State v. Scott,* 36 W. Va. 704, 15 S. E. 405.)

It is well stated by one court by way of argument and reasoning that "a new house is as vacant as one tenanted for years which was abandoned yesterday." (*State ex rel. Clarke v. Irwin,* 5 Nev. 111, 130.)

The latest edition of the Standard Dictionary defines the word "vacant" as "devoid of occupants, empty, unfilled, unoccupied, having no incumbent," and further in the definition it is said: "That is vacant which is without that which has filled or might be expected to fill it; vacant has extensive reference to rights or possibilities of occupancy."

It is said by one court that "an existing office without an incumbent is vacant." (*State v. Boecker,* 56 Mo. 21. See, also, *Stocking v. State,* 7 Ind. 326; *People v. Rucker,* 5 Colo. 464; *State v. Blakemore,* 104 Mo. 340, 15 S. W. 960.)

We conclude, therefore, first, that sec. 2 of Senate Bill No. 152 passed by the tenth legislative session, and approved

March 15, 1909, is inoperative and void for indefiniteness, uncertainty and incompleteness, and that judicial interpretation cannot give to it any force or vitality; second, that the act, freed from the void and inoperative provisions of sec. 2, is a complete and effective statute within itself, and third, that no election has been provided for by the act and that the call heretofore issued for the holding of a special election on April 27th is void and unauthorized; and lastly, that it is the duty of the governor, under the provisions of sec. 19, art. 5 of the constitution, and sec. 320, Rev. Codes, to appoint a competent and qualified person to fill the vacancy in the office of district judge for the eighth judicial district. The demurrer to the petition is sustained and the writ denied and the proceedings dismissed. No costs awarded.

Sullivan, C. J., and Stewart, J., concur.