'(January 25, 1910.)'

## THOMAS GILLESBY, Appellant, v. THE BOARD OF COUNTY COMMISSIONERS OF CANYON COUNTY, Respondent.

[107 Pac. 71.]

ELECTIONS—REGISTRATION—GENERAL ELECTION LAW—STATUTES—CONSTRUCTION—LOCAL OPTION—POLICE POWER—CONSTITUTIONAL LAW—ACTS VOID IN PART.

1. Sec. 2, art. 6, of the constitution of this state, commits the subject of registration of voters entirely to the legislature, and fully authorizes the legislature to enact such registration law as it deems wise; provided, of course, such law in no way contravenes any constitutional right of the elector.

2. The object and purpose of a registration law is to provide means for ascertaining and determining in a uniform mode whether a voter possesses the necessary qualifications to permit him to exercise the elective franchise, under the constitution and laws of the state.

3. Under the provisions of sec. 9 of the local option statute. all persons who registered for the last preceding general election are declared to be properly registered for an election held under the statute, and such electors are not required to re-register in order to vote at a special election held under the local option statute; and all persons not so registered may register for the special election according to the statute relating to registration.

4. Applying the general election law of the state, the registrars are required to give the notice provided to be given by sec. 396 of

the Rev. Codes; and under this section the days upon which the registrars will hear applications for registration are left to the discretion of the registrar except in so far as such days are fixed by the provisions of sec. 394 of the Rev. Codes.

5. Where the legislature has provided certain and fixed days upon which registration may be had for a special election under the local option statute, the fact that the statute also authorizes the registrars of the different precincts to fix other and additional days does not render such statute indefinite or uncertain or local or special legislation.

6. Under the provisions of sec. 394, each Saturday, after the notice of the registrar is given, up to and including the Saturday next preceding the election, is fixed as a day certain upon which the registrar shall receive applications for registration, and upon this day the registrar is required to receive applications for registration and it should be one of the days designated by the registrar in the notice.

7. *Held*, that the act approved Feb. 20, 1909 (Laws of 1909, p. 9), known as the local option law, is not void or unconstitutional for uncertainty and ambiguity in not providing, first, the period for the registration of voters at such election; second, in failing to fix the time when registrars must register voters; third, in failing to fix the time when registrars shall begin or cease to register voters; fourth, in failing to point out to the voters when they may register; and fifth, in failing to provide any procedure for registration.

8. *Knight v. Trigg*, 16 Ida. 256, 100 Pac. 1060, considered and distinguished.

9. Where one statute refers to another and makes the same a part of the former in so far as the same is applicable, in determining what provisions are applicable the court is called upon to construe into the former as a part thereof only such provisions of the latter as are applicable and will give force and effect to the former statute. This is merely determining what provisions of the general statute the legislature has made a part of the special statute, and is judicial construction and not judicial legislation.

10. The local option statute contains the provision, "in all matters and proceedings not herein otherwise specified, all the provisions, . . . . of the general election laws of the state shall apply and be observed, as far as the same are applicable," and thus adopts and makes a part of such statute only such provisions of the general election law as are applicable, and does not render such statute uncertain or indefinite by reason of the fact that all of the provisions of the general election law cannot be made applicable to an election held under the local option statute.

11. By construing into the local option statute such provisions of the general election law as are applicable, registration begins after the notice of election has been posted, at such time as the registrar may determine, and when no earlier time is fixed, on the first Saturday after such notice is given; and the registration continues from the time it commences up until and including the Saturday next preceding the time of holding such election; and registration may be had upon such days and at such times as are fixed by the registrar, and upon the Saturday fixed by the law, and on any other day except holidays during said time of registration when application is made at the place of registration, and the registration ends on the Saturday next preceding the holding of such election, and is to be made in the manner governing registration for general elections.

. 12. Under the constitution of this state, no person has any vested right to engage in the sale of intoxicating liquor, and the regulation, control or prohibition of the same is a proper exercise of the police power of the state; and in the exercise of such power the legislature may enact a statute licensing, regulating, or prohibiting such sale and disposition.

13. The purpose and object of the local option statute was to give the electors of each county an opportunity of expressing their will with reference to the sale and disposition of intoxicating liquors as a beverage, and the different sections of the statute governing its enforcement and the method of carrying out the will of the people are independent and separate provisions, and in no way govern or control the method provided by the legislature of submitting such question for determination by the electors of the respective counties.

14. This court will not declare the whole statute void unless all of the provisions are connected in subject matter, dependent on each other, were designed to operate for the same purpose, or are otherwise so dependent in meaning that it cannot be presumed that the legislature would have passed one without the other.

15. This court will not hold an entire act void or unconstitutional by reason of the fact that a section may be unconstitutional and void, where the latter is distinct and separable from the remaining provisions of the act and could be omitted and leave the act complete within itself and capable of being carried into effect, so as to accomplish the object of the law as intended by the legislature.

(Syllabus by the court.)

APPEAL from the District Court of the Seventh Judicial District, for Canyon County.    Hon. Ed L. Bryan, Judge.

The county commissioners of Canyon county ordered an election to be held under the local option statute.    Appellant

here appealed from such order to the district court where the order was affirmed, and appellant appeals to this court.   Judgment *affirmed.*

D. C. McDougall, Attorney-General, J. H. Peterson, Assistant Attorney General, John F. McLane, and O. M. Van Duyn, County Attorney of Canyon County, for Respondent.

Sec. 10 of the local option law provides that the provisions of the general election law shall only be followed so far as the same are applicable.   If, therefore, the general election law can be made applicable to the local option law so as to promote the purpose of its enactment under a liberal construction, it is sufficient and will stand.

A law may be general, and have but a local application, and it is none the less general and uniform because it may apply to a designated class, if it operates equally upon all the subjects within the class for which the rule is adopted.   In determining whether a law is general or special, the court will look to its substance and necessary operation as well as its form and phraseology.   (*Ladd v. Holmes,* 40 Or. 167, 91 Am. St. 457, 66 Pac. 714; 7 Words and Phrases Judicially Defined, 6578, 6579; *Cox v. State,* 8 Tex. App. 254, 34 Am. Rep. 746; *People v. Wright,* 70 Ill. 388; *People v. Hoffman,* 116 Ill. 587, 56 Am. Rep. 793, 5 N. E. 596, 8 N. E. 788; *Paul v. Gloucester Co.,* 50 N. J. L. 585, 15 Atl. 272, 1 L. R. A. 86; *Noonan v. County of Hudson,* 52 N. J. L. 398, 20 Atl. 255; *Groesch v. State,* 42 Ind. 547; *Dalby v. Wolf,* 14 Iowa, 228; *Fell v. State,* 42 Md. 71, 20 Am. Rep. 83; *State v. Wilcox,* 42 Conn. 364, 19 Am. Rep. 536; *Commonwealth v. Dean,* 110 Mass. 357; *State v. Cooke,* 24 Minn. 247, 31 Am. Rep. 344.)

The state has the power under its police power to absolutely prohibit the sale of intoxicating liquors within its borders.   (*License Cases,* 5 How, 504, 12 L. ed. 256; *Bartemeyer v. Iowa,* 18 Wall. 129, 21 L. ed. 929; *Boston Beer Co. v. Massachusetts,* 97 U. S. 25, 24 L. ed. 989; *Foster v. Kansas,* 112 U. S. 201, 5 Sup. Ct. 8, 97, 28 L. ed. 629; *Gibbons*

*v. Ogden,* 9 Wheat. 1, 6 L. ed. 23; *Mugler v. Kansas,* 123 U. S. 623, 8 Sup. Ct. 273, 31 L. ed. 205.)

The whole statute is not void unless all the provisions are connected in such matter, depend on each other, were designed to operate for the same purpose, or are otherwise so dependent in meaning that it cannot be presumed that the legislature would have passed one without the other. (1 Sutherland Stat. Const. 576.)

"A law affecting all alike who are in the same class is not class or special legislation." (*Boise L. & I. Co. v. Stewart,* 10 Ida. 38, 77 Pac. 25, 321; *Brooks v. Hyde,* 37 Cal. 366; *Barbier v. Connolly,* 113 U. S. 27, 5 Sup. Ct. 357, 28 L. ed. 923; *Hawkins v. Roberts,* 122 Ala. 130, 27 So. 327.)

A licensee takes his permit subject to the contingency that there may be changes in the law; it is not a contract, and confers upon him no vested rights in such sense as to be within the protection of constitutional guaranties. All its privileges, though unexpired, are canceled and revoked by the repeal of the law which authorized its grant. (23 Cyc. 110-112; *Fell v. State,* 42 Md. 71, 20 Am. Rep. 83.)

In the absence of statute, there appears to be no right in a licensee to recover back money paid on a license which has been rendered void by the subsquent passage of a local option law, or prohibition order. (*In re Lyman,* 28 Misc. Rep. 278, 59 N. Y. Supp. 828; *Peyton v. Hot Spring Co.,* 53 Ark. 236, 13 S. W. 764.)

Karl Paine, and Edwin Snow, for Appellant.

The power of the court is plenary, if it cares to legislate, but it cannot construe a voice into a law that is dumb. The law fails to prescribe the period of registration or the days of registration. Any court that fixes that period of registration or days of registration when the law is silent assumes the functions of the legislature. (*State v. West Side St. Ry. Co.,* 146 Mo. 155, 47 S. W. 959; *Holmberg v. Jones,* 7 Ida. 752, 65 Pac. 563; Sutherland Stat. Const., sec. 261; *Knight v. Trigg,* 16 Ida. 256, 100 Pac. 1060.)

When the legislature makes an arbitrary distinction and says that one set of men can within the state sell at wholesale for delivery outside a prohibition district and that another set of men cannot, then the legislature is indulging in a discrimination which is not warranted by the exigencies of the case and which is void as class legislation. (*State v. Hazelton,* 78 Vt. 467, 63 Atl. 305; *Gulf, C. & S. R. Co. v. Ellis,* 165 U. S. 150, 17 Sup. Ct. 255, 41 L. ed. 666; *Yick Wo v. Hopkins,* 119 U. S. 356, 6 Sup. Ct. 1064, 30 L. ed. 220; *Dobbins v. Los Angeles,* 195 U. S. 223, 25 Sup. Ct. 18, 49 L. ed. 169; *Douglas Park Jockey Club v. Grainger,* 146 Fed. 414, 423; *Crescent Liquor Co. v. Platt,* 148 Fed. 898.),

Gray & Knight, *Amici Curiae.*

The prohibition of the manufacture and sale of spirituous and intoxicating liquors is unconstitutional, unless it is confined to the prohibition of drinking saloons and the prohibition of the sale of liquors to minors, lunatics, confirmed drunkards, and persons in a state of intoxication. (Tiedeman, State and Federal Control of Persons and Property, p. 554.)

The court may not allow conjectural interpretations to usurp the place of judicial exposition. There must be a competent and efficient expression of the legislative will. (*State v. Partlow,* 91 N. C. 550, 49 Am. Rep. 652; *Wright v. Kelley,* 4 Ida. 624, 43 Pac. 565.)

It is not within the power of the most practiced lawyer to determine from a reading of the act who are qualified voters at such election, and who are not, nor is it possible to determine in what manner the election shall be carried on, or how registration shall be effected, or how the right to vote itself shall be determined by such registration.

"In order for the ministerial officers to hold and conduct an election, it is necessary that the legislative branch prescribe the manner and method and designate the procedure to be followed; otherwise, the ministerial officers would be involved in uncertainty and doubt, and would necessarily have to assume *quasi*-legislative functions in order to hold the elec-

tion." (*Knight v. Trigg*, 16 Ida. 256, 100 Pac. 1060; *Toneray v. Budge*, 14 Ida. 621, 95 Pac. 26.)

STEWART, J.—On July 21, 1909, the board of county commissioners of Canyon county made an order directing that a special election be held in said county on Wednesday, Aug. 25, 1909, to determine by ballot whether the sale or disposal of intoxicating liquors as a beverage should be prohibited within the limits of said county, under an act of the legislature of this state approved Feb. 20, 1909 (Laws of 1909, p. 9), and commonly known as the local option law. The appellant in this case, a citizen, resident, qualified elector and taxpayer of said county, appealed from such order to the district court of said county. The district court affirmed the order of the board of commissioners. This appeal is from the judgment of the district court.

The real question involved in this case is the constitutionality of the act approved Feb. 20, 1909 (Laws of 1909, p. 9), known as the local option law. Before entering into a consideration of the objections urged against the constitutionality of this statute, we are reminded of a rule which should always be recognized by a court in determining the constitutionality of a statute, and announced in the language of Chief Justice Shaw in the Wellington case, 16 Pick. 89, 26 Am. Dec. 631, as follows:

"That when called upon to pronounce the invalidity of an act of legislation passed with all the forms and solemnities requisite to give it the force of law, courts will approach the question with great caution, examine it in every possible aspect, and ponder upon it as long as deliberation and patient attention can throw any new light upon the subject, and never declare a statute void, unless the nullity and invalidity of the act are placed, in their judgment, beyond reasonable doubt."

And this rule has been approved in this state. (*Wooley v. Watkins*, 2 Ida. 590, 22 Pac. 102; *Wright v. Kelley*, 4 Ida. 624, 43 Pac. 565.)

We are alike reminded of another rule of law just as forcible and which is just as binding upon the courts in deter-

mining the constitutionality of a statute, and that is, that if a statute is found to contravene or violate the provisions of the constitution, it is a judicial duty of the court to so declare, whatever may have been the motive or purpose in enacting such statute, and without reference to its objects and purposes as disclosed by its provisions; and we enter upon an examination of the questions presented in this case fully appreciating the obligation imposed upon the court as announced in the above rules.

The first contention made by counsel for appellant against the constitutionality of this statute is that it does not by its own terms or by reference to other laws prescribe, first, the period for the registration of voters at such elections; second, that it fails to fix the time when registrars must register voters; third, that it fails to fix the time when registrars shall begin or cease to register voters; fourth, that it fails to point out to the voters when they may register; and fifth, that it fails to provide any procedure for registration.

The attorney general and counsel associated with him on the brief and in the argument answer these contentions by the claim that the law does provide full procedure for the registration of voters qualified to vote at such election, when the general election law is considered in connection therewith, but that if the court should find that the law does fail in this respect, yet it should not be held unconstitutional, but sustained upon the ground that no registration is required under its provisions. We shall treat these questions together. By the provisions of sec. 9 of this act, no person shall be permitted to vote until duly registered as required by law. From this provision we think we are justified in holding that it was the intention of the legislature to require registration for elections held under the provisions of this act, and to limit the right to vote at such election to qualified voters who have registered as required by law. This section further provides that all persons who were registered in the county for the last preceding general election need not register again. The effect of this provision is to declare the registration for the last general election a sufficient registration for the spe-

cial election of all persons who registered for such general election. The section further provides that all persons who were not registered for the general election may register for the special election according to the statutes relating to registration, for which purpose the registrars appointed for such general election shall act. To carry out this provision as to new registration, the registrars appointed for the general election are continued as registrars for such special election, and in case of a vacancy in the office of registrar the county auditor is empowered to fill such vacancy by appointment.

Thus the statute clearly provides registrars to make registration for such special election by declaring that the registrars appointed for the general election shall continue as registrars, and authorizing the county auditor to appoint a registrar where there is a vacancy. Sec. 10 of the act provides: "In all matters and proceedings not herein otherwise specified, all the provisions, . . . . of the general election laws of the state shall apply and be observed, as far as the same are applicable." And sec. 483 of the Rev. Codes also provides: "The provisions relating to general elections shall govern special elections, except where otherwise provided for." Thus, under the provisions both of the act and the code, the general election law of the state is made applicable to the special elections held under the provisions of this act in so far as the same are applicable. The question then arises: Can the provisions of the general election law with reference to registration of voters for a general election be made applicable to the registration of voters for an election held under the provisions of the local option statute, in all matters not covered by the local option statute?

The object and purpose of a registration law is to provide means for ascertaining and determining in a uniform mode whether the voter possesses the necessary qualifications to permit him to exercise the elective franchise under the constitution and laws of the state. (*Edmonds v. Banbury,* 28 Iowa, 267, 4 Am. Rep. 177; *State ex rel. Boyle v. Board of Examiners,* 21 Nev. 67, 24 Pac. 614, 9 L. R. A. 385.)

Sec. 2, art. 6 of the constitution of this state, commits the subject of registration entirely to the legislature, and fully authorizes the legislature to enact such registration law as it deems wise, and under this provision of the constitution there would seem to be no question but that the legislature possesses full power and authority to enact a registration law containing any provisions it may deem wise and just, provided, of course, such provisions in no way contravene any constitutional right of the elector.   Under the local option statute, all persons who registered for the last preceding general election are declared to be properly registered for an election held under this statute, and such electors are not required to re-register in order to vote at a special election held under the local option statute.   Sec. 9 of this act provides: "No person shall be permitted to vote at a special election called under this act, unless he is duly registered as required by law."   The inquiry then depends upon whether the general election law can be made applicable to the new and additional registration required under this act.

It will be observed that the only provision in this act which in any way controls the new registration is, that for the purpose of registration, the registrars appointed for the preceding general election shall act as such in the registration for the special election, and in case a registrar in any precinct fails to act or the office becomes vacant, the county auditor shall fill such vacancy by appointment.   We are required, then, to look to the general election law for all provisions regulating registration except as to who shall act as registrars.   By the provisions of sec. 1 of this act, in case an election is ordered, such election is required to be held not less than thirty nor more than sixty days after the order has been made by the board of county commissioners ordering such election, and twenty days' notice of such election is required to be given in the manner provided for general elections.   After the notice for a general election is given the general election law prescribes and fixes the duty of the registrars, and this same duty is imposed upon such registrars after the order is made for a special election under this stat-

ute and the notice given in the manner provided for general elections.

Turning to sec. 396 of the Rev. Codes, we find that the registrar prior to the time of commencing registration is required to post notices in at least three public places in different parts of his precinct most likely to give notice to the inhabitants thereof, giving the time, days and hours during and the place at which he will be ready to receive and hear applications for registration; and on the days named he is required to be at the place designated from the hours of 9 o'clock A. M. to 5 o'clock P. M. and from 7 o'clock P. M. to 9 o'clock P. M., and to receive and register the names of all persons applying who are or will be on the day of election entitled to vote. Under the provisions of this section the days on which the registrars will hear applications for registration are left entirely to the discretion of the registrar, and it is entirely within his power to fix the days when he will receive applications for registration, except in so far as such days may be fixed by the provisions of sec. 394 of the Rev. Codes. It is true that all of the provisions of the latter section cannot be made applicable to an election held under the local option statute, but the latter statute only makes such provisions a part of the local option statute *as are applicable,* and in determining what provisions are applicable this court is called upon to construe into the local option statute as a part thereof only such provisions of the general election law as are applicable and will give force and effect to the local option statute. This is declaring the law to be what the legislature has said it is. This is interpreting into the local option statute such provisions of the general election law as are applicable so as to obtain the intention of the legislature in enacting the local option statute. This is merely determining what provisions of the general election law the legislature has made a part of the local option law. It is judicial construction and not judicial legislation. (1 Lewis' Sutherland, Stat. Construction, sec. 8.)

Turning, then, to sec. 394 of the Rev. Codes, we find that this section fixes each Saturday up to and including the Satur-

day next preceding the election as a day for receiving applications for registration, and while the provisions with reference to the first day of August cannot be applied, the provision fixing Saturday as the definite and certain day for registration can be applied, and it was no doubt the intent of the legislature, in enacting the local option statute, to make each Saturday after notice of the election is given a definite and certain day upon which registration can be had.    Reading into the local option statute, then, the provisions of the general election law, with reference to registration, which are applicable, we find that the local option statute has provided that after the order for an election shall be made by the board of county commissioners, they shall cause notice of such election to be given of at least twenty days; and that upon the giving of such notice the registrars shall give notice of the time and hours at which applications for registration shall be made, and that such days are in addition to the day fixed by law, to wit, each Saturday after the giving of such notice up to and including the Saturday next preceding the election.    Thus the general election law becomes a part of the local option statute, so declared by the legislature, and the duties imposed upon the registrars by the general election law, in so far as the same are applicable, are required to be performed by them in carrying out and giving effect to an election held under the local option statute.    In this connection it may be observed that if a registrar should decline to act, or if he should act fraudulently and deny to electors of the precinct the right to register at the times fixed by law, the same remedies are open and might be pursued as in case such officer declined to act or acted fraudulently in such matters with reference to the registration for a general election, and such conduct on the part of the officer would be no more reason for holding the local option statute unconstitutional than the same conduct would be for declaring the general election law unconstitutional.    It is contended, however, by counsel for appellant that if the time of commencing registration is left to be fixed and determined by the registrar, then different dates for registration may be fixed in different

precincts for the same election. It will be observed, however, that the same day is fixed by law for registration in all the precincts of the county as each Saturday between the time of giving the notice and the Saturday next preceding the election. The other days the registrar is authorized to fix are merely for convenience; and as the legislature, under the constitution, is given power to fix the time of registration, in exercising such power the legislature could designate a tribunal to determine the qualification of the elector and the time and place at which such question would be heard.

In the case of *People v. Hoffman,* 116 Ill. 587, 56 Am. Rep. 793, 5 N. E. 596, 8 N. E. 788, the supreme court of that state, discussing this identical question, says:

"If it be admitted that the legislature can require a voter to establish his qualifications *before election,* it is difficult to see why, upon principle, or as a question of power, it cannot require such proof to be made, as well three weeks before the day for voting, as ten days, or five days, or even one day, prior thereto. The real question, involved in the objection, is, whether any man can be prevented from voting, who proves, or offers to prove, on the day on which he seeks to cast his ballot, that he is a legal voter. If cases can be supposed where the 'three weeks' requirement will deprive qualified electors of the privilege of depositing their votes, cases can also be supposed where one day's requirement will work the same result. This mode of reasoning, carried out to its logical sequence, will make any kind of registry law unconstitutional. For it would be a physical impossibility for the judges of election to receive the votes and make up the registry at the same time and on the same day."

It is also contended by counsel for appellant that if registrars of the respective precincts are authorized to fix the time when registration may begin, then such act violates art. 3, sec. 19, of the constitution, which declares: "The legislature shall not pass local or special laws in any of the following enumerated cases, that is to say: . . . . Providing for and conducting elections, or designating the place of voting." This statute, however, is not local or special; it is general in its

application and requires all registrars in the county to receive applications for registration upon each Saturday after the notice is given, up to and including the Saturday preceding the election, and upon such other days as the registrar may fix. As heretofore shown, the registration for an election is merely the preliminary determination of the qualification of the elector; and the statute fixes a specific time when he may make proof of such qualification and authorizes the respective registrars to fix such other times as the registrars may determine. But the fact that the registrar is vested with the discretionary power to fix days in addition to those fixed by the statute for receiving applications for registration would not make such law local or special. All persons qualified as voters are given the privilege to exercise such right uniformly throughout the county, and the mere fact that in establishing their right to vote they are given the privilege of making such proof upon such days as are convenient to the respective registrars, in addition to those specifically fixed by the statute, does not make such statute local or special. There can be no virtue in any particular date upon which registration may be had, and as long as the statute fixes a day and delegates to the registrar power to fix additional dates, there is no discrimination, as all persons belonging to the same class, that is, qualified to register in each precinct, are granted the same privileges for registration.

The same argument that is thus made against the constitutionality of this statute might be extended, because under the provisions of the act elections may be held in different counties upon different days, but as long as the act extends the same privileges to all belonging to the same class and there is no discrimination, and the provisions for registration are fair and reasonable and give all persons belonging to the same class an equal opportunity, it is not in effect local or special. (*Commonwealth v. McClelland,* 83 Ky. 686.) The constitution of the state of Illinois requires that ''All elections shall be free and equal,'' and yet in the case of *People v. Hoffman, supra,* that court declared that this pro-

vision "does not necessarily mean that there must be uniformity of regulation, in regard thereto, in all portions of the state." Certain regulations may be prescribed for the conduct of elections in cities and villages thereof that may have no application to the other places. In the case of *State v. Mason*, 155 Mo. 486, 55 S. W. 636, the supreme court of Missouri had under consideration this question as to whether a statute, which provided for the registration of voters in cities having three hundred thousand inhabitants, which is applied only to the city of St. Louis, was a special or local law within the constitutional provisions prohibiting the enactment of local or special laws, and held such statute to be constitutional and not local or special legislation.

Now, if we apply the local option statute and such provisions of the general election law governing registration as are applicable, we find that the questions contended for by counsel for appellant are fully met and answered as follows: First, the registration begins after the notice of election has been posted at such time as the registrar may determine, and when no earlier time is fixed, on the first Saturday after such notice is given; second, the registration continues from the time it commences up until and including the Saturday next preceding the time of holding such election, and registration may be made upon such days and at such times as are fixed by the registrar and upon the Saturday fixed by the law, and on any other day except holidays during said time of registration when application is made to him at his place of registration; third, the registration ends with the Saturday next preceding the holding of such election; fourth, registration may be had in the manner governing registration for general elections; fifth, the registrar may also register any qualified voter at any time or place during the time of registration.

To thus construe the statute clearly carries out the intent and purpose of the legislature, and in our opinion is a matter of judicial construction and not of judicial legislation. In the local option statute the legislature clearly said that the general election law should apply where it can be made ap-

plicable, and in construing the local option statute it is the duty of the court to apply the general election law where it can be made applicable so as to give effect to the intent and purpose of the legislature in enacting the local option statute. To our minds, this can clearly be done without breathing life into a dead statute or giving force or effect to a legislative enactment without meaning, and in no way supplies omissions or remedies any defects in a matter committed to the legislative department of the state; but it is rather giving effect to the intent and purpose of a statute and construing two separate acts as one where the legislature declares that such shall be done.

Counsel for appellant cite the case of *Knight v. Trigg,* 16 Ida. 256, 100 Pac. 1060, a recent decision of this court, and contend that the decision in that case is decisive of the questions presented upon this appeal. In that case the court had under consideration an act· creating the eighth judicial district, and held section 2 of the same unconstitutional, because it attempted to fix the qualification of voters different from that fixed by the constitution, and because of the uncertainty, ambiguity and incompleteness of the act in prescribing the procedure for the registration of voters for such election and the duties to be discharged by the officers under the act. We, however, think that a clear distinction will readily appear between the provisions of that act and the provisions of the act now under consideration by a comparison of the two. In the eighth judicial district act "All persons registered as voters at the last general election, and such other qualified voters as may offer themselves for registration to the several registrars of said counties prior to the day specified for holding said election, shall be qualified to vote thereat." While under the local option statute, "The qualifications of voters shall be the same as in general elections, . . . . and no person shall be permitted to vote at a special election called under this act, unless he is duly registered as required by law."

Thus it will be seen that under the eighth judicial district act the legislature attempted to fix the qualification of voters different from that fixed by the constitution; while under the

local option statute the qualification of voters is that fixed for a general election, in other words, the constitutional qualification. Under the eighth judicial district act it is provided: ''All persons registered as voters at the last general election, and such other qualified voters as may offer themselves for registration to the several registrars of said county prior to the day specified for holding said election, shall be qualified to vote thereat.'' While under the local option statute it is provided that all voters who were not registered for the preceding general election may register for the special election ''according to the statutes relating to registration, for which purpose the registrars appointed for such general election shall act.'' It will thus be seen that in the eighth judicial district act no provision is made for registration; while under the local option statute registration shall be had according to the statutes relating to registration; and while it also appears that under the eighth judicial district act, ''In other respects, the election shall be conducted, and the votes counted the same as at general elections,'' under the local option statute it is provided, ''and in all matters and proceedings not herein otherwise specified, all the provisions . . . . of the general election laws of the state shall apply and be observed, as far as the same are applicable.''

The language thus used in the two acts is very different. In the eighth judicial district act it was provided that in all other respects, except those provided in the act, the election should be conducted and the votes counted the same as at general elections; while in the local option statute the general election law is made to apply to all matters and proceedings not otherwise specified in the act in so far as the same are applicable. In the Knight-Trigg case this court held that the general election law could not be applied to an election held under that act. As the eighth judicial district act seemed to adopt the general election law without any exceptions or reservations, and there being nothing in the eighth judicial district act indicating any particular part or provision of the general election law which was adopted as a part thereof, to hold an election under sec. 2 of that act

"would be to undertake the exercise of purely political and ministerial functions surrounded with much ambiguity, uncertainty and doubt which would undoubtedly entail dissatisfaction and possibly future litigation"; while in the local option statute the legislature has clearly indicated what parts of the general election law are enacted as a part of the local option statute, and declares the same to be such parts as are applicable, and removes the doubt and uncertainty and ambiguity existing in the eighth judicial district act. If the legislature had provided in the eighth judicial district act that all such parts of the general election law as were applicable should be applied, in so far as the same were applicable, then the uncertainty, ambiguity and doubt referred to in the Knight-Trigg case would not have existed. By such declaration the legislature has clearly indicated the specific parts and portions of the general election law which are made a part of the local option statute, and the matter becomes one purely of construction and determination as to what portions are applicable, and in this respect there appears a clear distinction between the provisions of the act under consideration in the *Knight v. Trigg* case and the case now under consideration.

Before taking up for consideration the objections made by appellant to particular sections of this act, there are certain principles of law to which we may properly allude and which should at all times be kept in mind, and these are: First, that no person has any vested right to engage in the liquor traffic; second, that the regulation, control and prohibition of the liquor traffic is a proper exercise of the police power of the state; third, that in the exercise of such police power, in the absence of a constitutional provision limiting the power of the legislature, it may enact a statute licensing and regulating the sale and disposition of intoxicating liquors, or it may enact a statute entirely prohibiting and declaring illegal such sale and disposition. (*State v. Dolan*, 13 Ida. 693, 92 Pac. 995, 14 L. R. A., N. S., 1259; *Gale v. City of Moscow*, 15 Ida. 332, 97 Pac. 828; *License Cases*, 5 How. 513, 12 L. ed. 256; *Boston Beer Co. v. Massachusetts*, 97 U. S. 25, 24

L. ed. 989; *Schwuchow v. Chicago,* 68 Ill. 444; *La Croix v. County Commrs.,* 50 Conn. 321, 47 Am. Rep. 648; *Ex parte Lynn,* 19 Tex. App. 293; *Martin v. State,* 23 Neb. 371, 36 N. W. 554; *Kresser v. Lyman,* 74 Fed. 765; 23 Cyc. 92; *Crowley v. Christensen,* 137 U. S. 86, 11 Sup. Ct. 13, 34 L. ed. 620; *Sandys v. Williams,* 46 Or. 327, 80 Pac. 642.)

The purpose and object of the statute now under consideration was to give the electors of the county an opportunity of expressing their will with reference to the sale and disposition of intoxicating liquors as a beverage within each respective county of the state, and as heretofore shown there is nothing in the method provided or the manner fixed by the legislature in determining this question which in any way contravenes the provisions of the constitution. The different sections of the act governing its enforcement, and the method' of carrying out the will of the people as thus expressed, are independent and separate provisions, and in no way govern or control the method provided by the legislature for permitting the electors of a county to express such will; and although such provisions may be uncertain and ambiguous or unconstitutional, still such fact would not render the entire statute unconstitutional.

The author of Lewis' Sutherland on Statutory. Construction (vol. 1, sec. 296) clearly states the rule as follows:

"The court is not warranted in declaring the whole statute void unless all the provisions are connected in subject matter, depend on each other, were designed to operate for the same purpose, or are otherwise so dependent in meaning that it cannot be presumed that the legislature would have passed one without the other. The constitutional and unconstitutional provisions may even be expressed in the same section, or even in the same sentence, and yet be perfectly distinct and separable, so that the first may stand though the last fall."

It is next contended that sec. 21 of the local option statute contravenes sec. 17, art. 1 of the constitution of this state, and for that reason the entire act should be held unconstitutional. Sec. 21 is as follows:

"If any person violates the provisions of section 19 of this act, and so conceals himself that he is not known, upon complaint being made on oath before a justice of the peace or a probate judge that intoxicating liquors have been sold, given away, or otherwise disposed of in violation of law, and that the person committing such offense conceals himself in a house, room, booth, inclosure, or other place, or is using therein a device or subterfuge in selling, giving away, or otherwise disposing of such liquors, and that such person is unknown to the person making the complaint, it is the duty of such justice or judge to issue forthwith a warrant of arrest for such unknown person for the offense named in the complaint and immediately place such warrant in the hands of a constable or sheriff, who shall proceed at once to the house, room, booth, inclosure, or other place in which such violation of law is alleged to have occurred, and arrest all persons therein; and if such constable or sheriff is refused admittance, he shall force an entrance into such house, room, booth, inclosure, or other place, and, if necessary, break in the door or other part thereof, and arrest all persons found therein and deliver them before the officer before whom the warrant is returnable; and thereupon such proceedings shall be had as if such complaint and warrant contained the name of each person so arrested."

And sec. 17 of the Bill of Rights is as follows:

"The right of the people to be secure in their persons, houses, papers and effects against unreasonable searches and seizures shall not be violated; and no warrant shall issue without probable cause shown by affidavit, particularly describing the place to be searched and the person or thing to be seized."

It will be seen that sec. 21 as above set forth deals entirely with the subject of search for and arrest of persons charged with having violated the statute and who conceal themselves; and where the statute is secretly violated and the person is unknown. This section is distinct and separable from the remaining provisions of the act and could be omitted and yet the act be complete within itself; in other

words, the validity or effect of no other section or provision of the act depends upon sec. 21, and if this section be omitted, the act is capable of being carried into effect, and would be sufficient to accomplish the object of the law as intended by the legislature. It is apparent also that the provisions of this section were in no way an inducement which led the legislature to enact the local option statute, and for that reason they would not affect the constitutionality of the entire act.

In the case of *State v. Mulkey*, 6 Ida. 617, 59 Pac. 17, in discussing this question this court said: "If said sections be void (which we seriously doubt), as claimed by the appellant, the remaining sections would, under the provisions of section 16, article 3, of the constitution, be valid, if constitutionally passed; as, eliminating these five sections, there would remain sufficient to constitute a valid act which would support the judgment of conviction." In speaking of this subject this court again in the case of *In re D. C. Abel*, 10 Ida. 288, 77 Pac. 621, says: "But that objectionable feature of said section does not render the whole act unconstitutional and void, as the remaining part of the act is capable of being executed in accordance with the apparent legislative intent wholly independent of that portion attempting to confine the taking of orders to merchants only; the invalid part may be rejected and the valid portion permitted to stand, as we think the legislature would have passed the law regardless of the invalid part thereof."

In 1 Lewis' Sutherland on Stat. Construction, sec. 296, the author announces the rule as follows:

"Where a part only of a statute is unconstitutional, and therefore void, the remainder may still have effect under certain conditions. . . . . The point or test is . . . . whether they are essentially and inseparably connected in substance. If so connected, the whole statute is void.

"If one provision of an enactment is invalid and the others valid, the latter are not affected by the void provision, unless they are plainly dependent upon each other, and so insepara-

bly connected that they cannot be divided without defeating the object of the statute.    And the converse is true.''

This section being independent and in no way involving the effect of any other provision or section of the act, and the remainder of the statute capable of being carried into effect and accomplishing the object and purpose of the legislature, even if it be conceded that this section is unconstitutional, it would not necessarily affect the validity of the remaining portions of the act; and as under the issues in this case it does not appear that the personal or property rights of the appellant or anyone else have been violated by an effort to enforce the provisions of this section, it is unnecessary and, in our judgment, would be improper for this court to determine the constitutionality of this section. (*Knight v. Trigg, supra; In re Gale,* 14 Ida. 761, 95 Pac. 679; 1 Lewis' Sutherland on Stat. Construction, chap. 9.)

It is also contended that sec. 8 of the act is void because of uncertainty and obscurity in not providing to whom the licensee shall apply for the money to be refunded, and who is required to refund such money under the provisions of said act upon licenses granted in the county after the passage of the act and declared to be void after ninety days from the date of election.    Counsel argue that after license money has been paid it is required to be apportioned, a portion of which goes to the school fund and is distributed to the school districts and a part is required to be paid into the state treasury; and that there is no method provided in the statute whereby such money shall be obtained from the school districts, and that to require the refunding of money paid into the state treasury would be a violation of sec. 19, art. 3 of the constitution, which provides that local or special laws shall not be passed refunding money paid into the state treasury.    The same reason why this court does not pass upon sec. 21 applies with like force to this section.    The occasion may never arise when any licensee will make application to have license money refunded or be entitled to have the same refunded as provided in this act, and it would be useless for this court to discuss whether such licensee could compel the

refunding of the license money as provided in this act; and in this connection it may be proper to observe that a license for the sale of intoxicating liquors is not a contract between the state and the licensee, but is merely a permission, and is subject at all times to the control of the state, and in exercising the police power the legislature may pass an act which in effect revokes and annuls a license issued prior to the passage of such act, and the legislature possesses such power without making any provision whatever for the refunding of license money paid. (*Ex parte Lynn*, 19 Tex. App. 293; *State v. Cooke*, 24 Minn. 247, 31 Am. Rep. 344; *Martin v. State*, 23 Neb. 371, 36 N. W. 554; 23 Cyc. 92.)

It is next contended that sec. 8 is void because it is obscure and uncertain as to when the act takes effect. This question is settled by the provisions of sec. 22, art. 3 of the constitution of this state, as follows:

"No act shall take effect until sixty days from the end of the session at which the same shall have been passed, except in case of emergency, which emergency shall be declared in the preamble or in the body of the law."

The act now under consideration contains no emergency clause, therefore would not take effect until after sixty days from the end of the session at which the same was passed; and while the constitution thus fixes the time when the act takes effect, still its provisions may become operative at the time, in the manner and upon the conditions or events provided in the act. It is entirely within the province of the legislature to enact a statute, the provisions of which will not become operative until a future date; and to specify upon what conditions or event such statute will become operative. (1 Lewis' Sutherland, Stat. Construction, secs. 96-106.) And when some person sells or disposes of intoxicating liquors in a county where the electors have voted that such sale and disposition shall be prohibited, and such person is charged with a violation of such statute, the issue may arise as to whether such person has violated or is amenable to the provisions of such statute; and the court can properly and will be required to determine such question, but that question does

not arise in this case. What has been said with reference
to the preceding sections applies also to the objections made
to secs. 15, 16, 17, 22 and 29.

The judgment is *affirmed*. Costs awarded to *respondent*.

Sullivan, C. J., and Ailshie, J., concur.