# WHEELING.

## STATE *v.* SCOTT.

Submitted June 11, 1892.—Decided June 18, 1892.

1 JURY—CONSTRUCTION OF STATUTES.

The exposition of the act of the legislature passed on the 27th of February, 1891, in relation to petit juries, and embraced in the Code (1891) as chapser 116, p. 773, and to be found in the Acts of 1891 as chapter 42, p. 92, made by this Court in the case of *State* v. *Mounts, supra,* p. 179 (14 S. E. R. 407) is approved and reaffirmed.

2. JURY—CONSTRUCTION OF STATUTES.

In construing a statute we are not at liberty, where the language is free from ambiguity, to substitute one word for another, and thereby change and reverse the express language of the act; yet it is a settled rule of construction to construe words used by the legislature in such manner as will advance the intention, prevent inconvenience, and avoid conflict with settled policy.

3. JURY—CONSTRUCTION OF STATUTES—VACANCY.

The word "vacancy," where used in a statute, does not necessarily presuppose a former incumbent of an office. It fitly and aptly describes the condition of an office newly created, and never filled by any previous incumbent.

4. JURY—COMMISSIONERS—CONSTRUCTION OF STATUTES—VACANCY.

   Under the jury law above mentioned, and professing to act in pursuance thereof, the Circuit Court of Cabell county appointed jury-commissioners on the 10th of June, 1891, but the order specifically set out that the terms of the respective appointees should correspond with the unexpired terms commencing June 1, 1891. This appointment will be construed as intended to fill a vacancy, and as in conformity to and fully authorized by the jury act; and the commissioners so appointed were legitimately in office during the said unexpired terms, and their acts are entitled to full faith and credit.

5. JURY—REVERSAL—MURDER—NEW TRIAL.

   Where the evidence sufficiently tends to show that the prisoner induced a chance quarrel, and concluded it by advancing upon his adversary and striking him a mortal blow with a deadly weapon, with which he had not previously armed himself, it is for the jury to decide upon the character of the provocation, and whether the offence is manslaughter or murder in the second degree; and, if the record does not disclose any improper instruction upon the subject, which we can review, we will not reverse the decision of the Circuit Court overruling a motion to set aside the verdict, and grant a new trial.

*Campbell & Holt, E. Northcott* and *D. E. Mathews* for plaintiff in error cited Code (1891) c. 116, s. 3; 10 Vroom 476.

Attorney-General *Alfred Caldwell* for the State.

LUCAS, PRESIDENT:

This case comes before us upon writ of error from a final judgment of the Circuit Court of Cabell county, entered on the 30th day of November, 1891, upon an indictment for murder. A writ of error and *supersedeas* has been granted to the petitioner, Thomas Scott, and in his petition he assigns sundry errors as having been committed by the Circuit Court before his trial and during its progress and before judgment was entered against him.

The first assignment is that the court erred in overruling a motion to quash the panel of the jury upon a challenge to the array made by the prisoner through his counsel at the proper preliminary stage of the proceedings, and before the jury were sworn. It is set out in the first bill of exceptions, that the challenge to the array was based upon the fact, that the jury commissioners, by and through whom the

89

jury was obtained, were appointed in pursuance of chapter 116 of the Code as amended and re-enacted by chapter 42 of the Acts of the legislature of 1891, and that, therefore, their term of office, under the language of the act, would not commence until the 1st day of June, 1892, and consequently they had no authority to act in an official capacity, the functions of which would not devolve upon them until the 1st day of June, 1892, when, by the express language of the statute, their term of office would properly begin.

In the case of *State* v. *Mounts, supra* p. 179 (14 S. E. Rep. 467) it was held by this Court that the jury act in question was constitutional; that, having been passed on the 27th day of February, 1891, it took effect on the 28th day of May following. It was further held that an appointment under said act, made by a court or judge on the 1st day of June, 1891, conferred upon the appointee the office of jury-commissioner; and that his term of office commenced on the 1st day of June, 1891. In that opinion it was at least intimated, although not decided, that an appointment after the 1st day of June, 1891, if made without qualification, would confer upon the appointee the office of jury-commissioner; but that his term would commence, should we adhere to the letter of the law, on the 1st day of June next succeeding; that is to say, on the 1st day of June, 1892. The language of the act which we were then called upon to construe, and which is now again before us for construction, is as follows:

"(3) There shall be two jury-commissioners of the Circuit Court for each county. They shall be of opposite politics, citizens of good standing, resident in the county for which they are appointed and well-known members of the principal political parties thereof. They shall be appointed by the Circuit Court or the judge thereof in vacation of their respective counties. Their term of office shall be four years, and shall commence on the first day of June next after their appointment; but the first two shall be appointed, one for two years and the other for four years, and thereafter, alternately, for the full term of four years. They may be removed from office by the court or judge having the power of appointment, for official misconduct,

incompetency, habitual drunkenness, neglect of duty or gross immorality. Vacancies caused by death, resignation or otherwise shall be filled for the unexpired term in the same manner as the original appointments. The jury-commissioners shall keep in a well-bound book a record of the proceedings, to be preserved by the clerk of the Circuit Court in his office. They shall receive two dollars per day for each day necessarily employed as such jury-commissioners, payable out of the county treasury upon the order of the Circuit Court. The first appointment of said commissioners shall be made within thirty days after this act takes effect. The jury commissioners of each county shall at the levy term of the County Court thereof annually, and at any other time when required by the Circuit Court of such county, without reference to party affiliations, prepare a list of such inhabitants of the county not exempted as aforesaid, as they shall think well qualified to serve as jurors, being persons of sound judgment, and free from legal exceptions, which list shall include at least twenty persons for every thousand inhabitants in such county, but in no case shall such list include a less number than one hundred persons. But the name of no person shall be put on such list who may have requested the jury commissioners, or either of them, by himself or another person, to have his name placed on such list," etc.

It will be observed that the statute declares, in language which admits of no misconstruction and affords no room for interpretation, that the term of office of the commissioners appointed "shall commence on the 1st day of June next after their appointment."

It is contended on the part of the State that this provision should be construed to apply only to the jury-commissioners who should be appointed after the first appointments for the year 1891 should be made, but, unfortunately for this position, there is no such exception made in the act itself, and it is a well-settled maxim of judicial construction that where the act itself provides no exception, none shall be interpolated by judicial construction.

It is further argued that the whole of the act must be considered together, and, so far as possible, reconciled; and

that the provision, that the first appointment of commissioners shall be made within thirty days after the act takes effect, should be construed as so far modifying the former clause about the commencement of the term of service as to render it possible for us to hold that the term of the first appointees should commence on the 1st day of June next preceding their appointment, in cases where the appointment is made within the thirty days, but after the 1st of June.

Such a construction is liable to two fatal objections. One is that it would interpolate an exception in the act which the legislature have not seen proper to insert; and, in the second place, it would have the effect, in certain cases, to make the words "next after" mean "next preceding," or "before." This would be contrary to the cardinal maxim of construction, that, where the language itself admits of no ambiguity, none shall be created by judicial construction. When the legislature has said plainly that the term of office shall commence after a certain period, it is impossible for us to construe the word "after" as if it had been written "before."

Neither does the section allowing thirty days within which the first appointments are to be made conflict in the slightest degree with the previous provision that the term of office shall commence on the 1st of June next after the appointment. The language of the act is that the first appointment shall be made within thirty days after the act takes effect, thus prohibiting by implication the appointment beyond the period of thirty days from the 28th day of May, 1891, when the act, as we have seen, took effect, it having been passed on the 27th day of February of the same year.

It is quite true that this provision, as it turned out, left the judges only five days within which to make the appointments; or if the judges should make such appointments after the 1st of June, the inconvenience of having no jurors until after the 1st of June, 1892, would be the result, as the consequence of legislative indiscretion, or of default on the part of the circuit judges, who may have omitted to act promptly, as the circumstances evidently required.

This inconvenience this Court is not called upon to criticise as a matter of fact, nor is it in our power to correct as a matter of judicial construction. We are not at liberty to say that the legislature did not intend what its language so unequivocally imports that it is impossible to be misunderstood. The rule upon this subject is laid down by Mr. Sutherland in the following language:

"If the language be plain, unambiguous and uncontrollable by other parts of the act, the other acts or laws upon the same subject, the courts can not give it a different meaning to subserve public policy or to maintain its constitutionality. The limited meaning of words will be disregarded, when it is obvious from the act itself, that the use of the word was a clerical error, and that the legislature intended it in a different sense from its common meaning. Where that which is directed to be done is within the sphere of legislation, and the terms used clearly express the intent, any reasoning derived from the supposed inconvenience or even absurdity of the result is out of place. It is not the province of the court to supervise legislation, and keep it within the bounds of propriety and common sense." Suth. St. Const. § 238.

I would not be understood, by adopting this quotation, as intending to criticise the legislation which we are now considering. I find by recurring to the journal of the house of delegates of the session of 1891 that this bill was introduced at an early day of the term by Judge Ferguson, and that that eminent jurist followed it with commendable zeal in his own house, and that it passed the house and was reported to the senate on the 17th day of February, 1891, but that the senate retained the bill until the 27th, when it passed that body, and became a law.

After the bill had been put upon its third reading in the house, its author was permitted, by unanimous consent, to give it some finishing touches by way of an amendment, and I can not believe that the probability of some inconvenience resulting from the late passage of the law could have escaped his attention; but, as we shall see, I am satisfied that a subsequent clause in the act, which I shall now proceed to take up and consider, was intended to prevent

and remedy the inconvenience before spoken of. The clause to which I now refer is as follows: "Vacancies caused by death, resignation, or otherwise, shall be filled for the unexpired term in the same manner as the original appointments." I am satisfied that the intent of the legislature was that this clause should remedy any inconvenience which might result from an accidental failure on the part of any circuit judge to appoint before the 1st day of June, 1891.

A failure to appoint before the 1st of June left the office of jury-commissioner vacant, and this was a "vacancy" which the act itself in plain language authorized the Circuit Court or the judge thereof to fill for the unexpired term. In the present case—fortunately, perhaps, for the ends of justice—the order of appointment does on its very face state that it is for the unexpired term which commences on the 1st of June, 1891, and would expire as to one of the commissioners on the 1st day of June, 1893, and as to the other on the 1st day of June, 1895.

The order of appointment, which is set out in the record, is as follows: "By virtue of and in pursuance to chapter 116 of the Code, as amended and re-enacted by chapter 42 of the Acts of legislature of 1891, the court doth designate and appoint N. H. Burks and Thomas Hawkins as the two jury commissioners of the Circuit Court of Cabell county; the said N. H. Burks to serve for the period of four years, and the said Thomas Hawkins for the period of two years, from the first day of June, 1891; and the clerk of this court is hereby directed to have the said parties notified of their appointment."

It will be perceived that, while the court does not in terms say that the appointment is to fill a vacancy, yet the record shows that there was a vacancy, and the order shows that the appointment was for the unexpired term. We find confronting us no canon of construction which would present any obstacle to our deciding that this was a "vacancy" such as was contemplated by the Act, and that the appointment was properly made to fill such vacancy, and that the term of service of the appointee commenced immediately upon his appointment, as in all other cases where appoint-

ments to fill vacancies are made; the very object of such appointments being to prevent an *interregnum* in the office. While we can not, as we have already seen, create an ambiguity for the purpose of substituting one word for another, and thus completely changing and reversing the language of the statute, yet we are at liberty, and it is a settled rule of construction, to construe words, which the legislature has used, in such manner as will advance the intention of the act, prevent inconvenience and avoid conflict with settled policy.

It has been sometimes held that the word "vacancy" does of itself presuppose a former incumbent, but such is not the imperative, nor even natural, meaning of the term. Following the lexicographers, Mr. Black, in his Law Dictionary, defines a vacancy to be "a place which is empty." He furthermore proceeds to say the term "vacancy" applies not only to the *interregnum* in an existing office, but it applies and fitly describes the condition of an office when it is first created and has been filled by no incumbent.

In the case of *Walsh* v. *Com.*, 89 Pa. St. 419, the point was directly decided, and it was held, that when a new county is erected a "vacancy" in the county offices happens within the meaning of the constitutional provision. The opinion of the court was delivered by Judge WOODWARD and on page 425 he, by many examples, shows that the words "vacant" and "vacancy" simply mean "empty" and "void" or "unoccupied." He concludes as follows: "Usage has warranted the employment of these words in an enlarged and proper sense, but the primary and strictly grammatical meaning which they still retain is the identical, exclusive, originial signification. The result is that the word 'vacancy' aptly and fitly describes the condition of an office when it is first created and has been filled by no incumbent. The need to strain and torture terms would lie in the opposite direction."

So, in the present case, we simply use the word with that signification attached to it which it has in many legislative Acts and in common conversation ; for example, when the legislature speaks of "vacant lands" or "vacant lots," it means such lands and lots as are unoccupied, whether there has ever been any previous occupation or not.

Upon every consideration, therefore, of public policy, and guided by the plain intent of the legislature, and construing its language with a natural and easy reference to the meaning of the word "vacancy," we are at liberty to decide and do decide, that the appointment of the jury-commissioners in the present case was to fill a vacancy; that it was authorized by the Act; and that there was no error on the part of the Circuit Court in overruling the motion to quash the panel. This disposes of the first bill of exceptions and the first assignment of error.

The second assignment is that the court erred in giving instruction No. 3 for the State, over the objection of the prisoner. It is sufficient to say upon this subject that the second bill of exceptions does not, nor does any part of the record, show that the prisoner excepted to the giving of this instruction at the time when it was offered, or at any time during the progress of the trial. It is a rule of practice, perhaps without exception, that, if a party desires to get the benefit of an exception to the granting of an instruction, he must except at the time and call the attention of the court to that fact, and have it entered on the record, or otherwise certified by the presiding judge that such exception was reserved at the proper time, and that the instruction was objected to when granted.

There remains only to consider the last assignment of error, which is that the court refused to set aside the verdict on motion of the prisoner. Upon examining the evidence which is embodied in the second bill of exceptions, and applying the usual rule of rejecting all the evidence of the exceptant which conflicts with that of the prevailing party, we are unable to find that there is error of which the petitioner can complain. The jury found him guilty of murder in the second degree, and recommended him for the slightest punishment, and the court accordingly sentenced him for five years to the penitentiary; that being the lowest period attached by law to the offence.

It is quite true that the fatal blow struck by the prisoner with an unlawful weapon of deadly character was given in what might be termed a chance medley or affray, which occurred in an unpremeditated manner. If the prisoner had

been able to prove that he himself was entirely blameless in the quarrel which thus fatally resulted, and that his assailant was bent upon inflicting great bodily harm, these circumstances ought to have reduced his offence to manslaughter. But the evidence of the State would seem to entirely justify the jury in concluding that the prisoner started the quarrel by very boisterous and unseemly behavior, where the deceased and his companions, including two women, were engaged in drinking beer; that, when asked to desist, the prisoner retorted with foul and abusive epithets, and that he thus provoked the quarrel, and concluded it by throwing a two-pound iron weight with deadly aim at his antagonist, who could not have been distant from him more than eight or ten feet. Furthermore, he himself in his testimony, states that before throwing it he "steadied" himself; and further evidence of the State tends to show that he must have advanced two or three steps towards his adversary.

The commencement of the quarrel by him, and the violence of his resentment out of proportion to the provocation, tended to prove that malignity of disposition which the law defines to be malice towards mankind; and therefore, when the jury found him guilty of murder in the second degree, they did not go beyond their usual province; nor was the court at liberty to set aside their verdict without violating those principles which influence and control our courts in granting new trials. For these reasons the judgment of the Circuit Court is affirmed.

AFFIRMED.