421 S.E.2d 53

**STATE of West Virginia ex rel. Terry HARDEN, Petitioner,**

v.

**Ken HECHLER, Secretary of State of West Virginia; Paul D. Taylor, Evelyn Parsons and Robert Burkhart, Ballot Commissioners of the County of Berkeley; Huntington Smith, Herbert Lopp and Betty Moss, Ballot Commissioners of the County of Morgan; James E. Watson, Bianca James and Doris R. Whiting, Ballot Commissioners of the County of Jefferson; and Herbert A. Russell, Respondents.**

No. 21242.

Supreme Court of Appeals of West Virginia.

Submitted July 7, 1992.

Decided July 20, 1992.

Victor A. Barone, Hurt & Barone, Charleston, for petitioner.

A. Renee Coe, Deputy Secretary of State, Sp. Asst. Atty. Gen., Charleston, for respondent, Ken Hechler.

James S. Arnold, Thomas Parke Larus, King, Betts & Allen, Charleston, for respondent, Herbert A. Russell.

Janet L. Scalia, Asst. Pros. Atty. for Berkeley County, Martinsburg, for respondents, Paul D. Taylor, Evelyn Parsons and Robert Burkhart.

Charles S. Trump IV, Pros. Atty. for Morgan County, Berkeley Springs, for respondents, Huntington Smith, Herbert Lopp and Betty Moss.

McHUGH, Chief Justice:

In this original proceeding in mandamus, the petitioner, Terry Harden, seeks to have this Court compel the Secretary of State, Ken Hechler, to certify to the counties of Berkeley, Morgan and Jefferson the name of the petitioner as the Democratic candidate for Senator for the 16th Senatorial District in the general election, and to further compel the ballot commissioners of those counties to replace the name of Herbert A. Russell on the ballots in their respective counties with the name of the petitioner.

### I

The petitioner was a candidate on the Democratic ticket for the office of Senator for the 16th Senatorial District in West Virginia in the state-wide primary election held on May 12, 1992. The 16th Senatorial District comprises the counties of Berkeley, Jefferson and Morgan. The petitioner's opponents in the primary election for this office were Herbert A. Russell and Curtis E. Brannon.

Upon tabulation of the primary election votes, Mr. Russell was declared the winner of the senate race for the Democratic nomination in the 16th Senatorial District with 4,163 votes. The petitioner received 4,020 votes and the third candidate, Mr. Brannon, received 2,617 votes.

On June 10, 1992, the petitioner filed a petition for a writ of mandamus with this Court seeking the relief noted above. The petitioner contends that Mr. Russell was ineligible for the office of senator because he had not been a citizen of West Virginia for the five years preceding the election as required by article IV, section 4 of the *West Virginia Constitution*. The petitioner also maintains that he is entitled, as the eligible candidate receiving the next highest number of votes, to have his name placed on the general election ballot.

### II

■ The constitutional provision at issue in the present case is article IV, section 4 of the *West Virginia Constitution*, which provides:

No person, except citizens entitled to vote, shall be elected or appointed to any state, county or municipal office; but the governor and judges must have attained the age of thirty, and the attorney general and senators the age of twenty-five years, at the beginning of their respective terms of service; and must have been citizens of the State for five years

next preceding their election or appointment, or be citizens at the time this Constitution goes into operation.

The clear language of article IV, section 4 of our *Constitution* requires that candidates for the office of senator be citizens of the State "for five years next preceding their election." The secretary of state and Mr. Russell, however, challenge the constitutionality of the five-year citizenship requirement on the grounds that it violates the equal protection clauses of both the *United States Constitution* and the *West Virginia Constitution*.[1]

In *White v. Manchin,* 173 W.Va. 526, 318 S.E.2d 470 (1984), this Court discussed the constitutionality of the one-year durational residency requirement stated in article VI, section 12 of our *Constitution.* In *White,* this Court recognized three primary reasons why courts have upheld state constitutional and statutory durational residency requirements for state offices: (1) the requirements promote candidate familiarity with the needs and problems of the people to be represented; (2) the requirements promote voter familiarity with the character, intelligence, and reputation of the candidates; and (3) durational residency requirements further the goal of precluding frivolous or fraudulent candidacies by those who are more interested in public office than private service.[2] 173 W.Va. at 545, 318 S.E.2d at 489. This Court asserted that strict scrutiny was required to be applied to determine whether a durational residency requirement for the office of state senate was constitutional.[3] We held in *White* that the one-year durational residency requirement for state senators found in article VI, section 12 of the *Constitution* serves a compelling state interest and does not violate the fundamental constitutional rights of either candidates or voters.

The same compelling state interests justifying the one-year residency requirement under article VI, section 12 of the *West Virginia Constitution* apply to the five-year citizenship requirement challenged in the case now before us. The five-year citizenship requirement under article IV, section 4 of our *Constitution* serves the principal state interests of ensuring that the candidate is familiar with his constituency and aware of the needs and problems of both the State and its people. The durational citizenship requirement also makes certain that the voters are familiar with the candidate's character, reputation, integrity and intelligence. Finally, the five-year citizenship requirement prevents frivolous candidacies by people who are only interested in holding public office[4] and not genuinely concerned with the difficult issues facing this State and its people.

Therefore, we hold that compelling state interests are served by article IV, section 4

---

1. The fourteenth amendment to the *United States Constitution* provides, in part:

> All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the State where they reside. No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.

The equal protection provisions in the *West Virginia Constitution* are found in article III, section 10 and article III, section 17. Article III, section 10 provides: "No person shall be deprived of life, liberty, or property, without due process of law, and the judgment of his peers." Article III, section 17 of the *West Virginia Constitution* states: "The courts of this State shall be open, and every person, for an injury done to him, in his person, property or reputation, shall

have remedy by due course of law; and justice shall be administered without sale, denial or delay."

2. In *White,* this Court cited an exhaustive list of cases where courts have invalidated *local* durational residency requirements, and also cited several cases where courts upheld *state constitutional* durational residency requirements. 173 W.Va. at 544–45, 318 S.E.2d at 488–89.

3. We also stated, in *State ex rel. Piccirillo v. City of Follansbee,* 160 W.Va. 329, 335, 233 S.E.2d 419, 423 (1977), that "[o]nce determined that the right to run for office is a fundamental right, the test is whether the challenge[d] restriction serves a compelling state interest."

4. In *Sununu v. Stark,* 383 F.Supp. 1287, 1290 (D.N.H.1974), *aff'd,* 420 U.S. 958, 95 S.Ct. 1346, 43 L.Ed.2d 435 (1975), the court stated that a seven-year durational residency requirement prevents "political carpetbagging."

of the *West Virginia Constitution,* which provides that a candidate for senator must be a citizen of the State for five years next preceding the election, and therefore, that constitutional provision does not violate a candidate's rights to equal protection.

## III

■ Even though we have held that the five-year citizenship requirement is constitutional, we must consider whether Mr. Russell has satisfied that requirement.

The evidence presented to this Court, some of which was presented at oral argument and was not disputed by Mr. Russell, is that Mr. Russell did not pay income tax in this State during the years of 1987 and 1988. He did not register to vote in West Virginia until October 17, 1989. Mr. Russell did not have a West Virginia driver's license until November of 1989, and his 1987 Dodge automobile was titled and registered in the District of Columbia until November of 1989. Finally, he did not purchase a home in this State until August of 1989.

Mr. Russell is not precluded from ever running for the office of senator. He is, however, required to be a citizen of this State for a five-year period before he will be eligible for that office. From the undisputed evidence presented to us, we conclude that Mr. Russell has not satisfied the five-year citizenship requirement and therefore, he is ineligible for the office of senator for the 16th Senatorial District.

## IV

■ The petitioner has concluded that, by virtue of Mr. Russell's ineligibility, he is entitled to be declared the winner of the primary election because he is eligible and he received the next highest number of votes. In support of his argument, the petitioner relies upon the language of *W.Va.Code,* 3–5–18 [1963], which provides, in relevant part:

The secretary of state shall certify, under the seal of the state, to the clerk of the circuit court of each county in which a candidate is to be voted for, *the name of the candidate of each political party receiving the highest number of votes in the political division in which he is a candidate, and who is entitled to have his name placed on the official ballot in the general election as the nominee of the party for such office.* (emphasis added)

The secretary of state, under *W.Va. Code,* 3–5–18 [1963], has a ministerial duty to certify the name of the candidate with the highest number of votes who is entitled to have his or her name placed on the official ballot. The secretary of state did not certify anyone as the nominee in this case because he was waiting for a decision from this Court as to Mr. Russell's eligibility.[5] The petitioner contends that the secretary of state's failure to certify does not create a vacancy, and that he is entitled to be certified as the candidate. We disagree.

First, we point out that any question regarding a candidate's qualifications should be raised before the primary election. The information regarding Mr. Russell's ineligibility was clearly discoverable prior to the primary election. Had a simple investigation into Mr. Russell's qualifications been performed prior to the primary election, the voters could have nominated an eligible candidate and perhaps the vacancy in the nomination could have been avoided.

Next, we recognize that the secretary of state has a ministerial duty to certify the name of the candidate receiving the highest number of votes. Had the secretary of state fulfilled his obligation and certified Mr. Russell's name, a vacancy would have occurred because of Mr. Russell's disqualification. Although the secretary of state had a ministerial duty to certify the name of the candidate receiving the highest number of votes,[6] there is no statutory or con-

---

5. The secretary of state did not certify the name of Mr. Russell despite the fact that he believes Mr. Russell is eligible for the office of senator.

6. We recognized in *State ex rel. Maloney v. McCartney,* 159 W.Va. 513, 527, 223 S.E.2d 607, 616, *appeal dismissed, Moore v. McCartney,* 425 U.S. 946, 96 S.Ct. 1689, 48 L.Ed.2d 190 (1976),

stitutional provision stating that his failure to certify does *not* create a vacancy. There is a statutory provision, however, which directs the procedure to be followed in the event a vacancy occurs after a nominated candidate is disqualified. *W.Va. Code*, 3–5–19(a) [1991] provides, in pertinent part:

(a) If any vacancy shall occur in the party nomination of candidates for office nominated at the primary election or by appointment under the provisions of section eleven [3–5–11] of this article, the vacancies may be filled, subject to the following requirements and limitations:

(1) Each appointment made under this section shall be made by the executive committee of the political party for the political division in which the vacancy occurs: Provided, That if the executive committee fails to make an appointment in a duly called meeting or fails to certify the appointment of the candidate to the proper filing officer within the time required, the chairperson of the executive committee may make the appointment not later than two days following the deadline for the executive committee.

. . . .

(4) If a vacancy in nomination is caused by the disqualification or incapacity of the candidate, and if the vacancy occurs not later than eighty-four days before the general election, a nominee may be appointed by the executive committee and certified to the proper filing officer no later than seventy-eight days before the general election.

██ Thus, when a vacancy in nomination occurs as a result of the disqualification of the candidate not later than eighty-four days before the general election, *W.Va. Code*, 3–5–19 [1991] provides that a nominee may be appointed by the executive committee of the political party for the political division in which the vacancy occurs and certified to the proper filing officer no later than seventy-eight days before the general election.

Finally, we point out, in further response to the petitioner's claim that he is entitled to be certified as the nominated candidate, that although Mr. Russell is not eligible for the office of senate, his ineligibility does not automatically entitle the candidate receiving the next highest number of votes to be declared elected. In syllabus point 9 of *Dryden v. Swinburne*, 20 W.Va. 89 (1882) this Court recognized:

If an alien [7] and a citizen eligible to office are candidates for the same, and the alien receives the majority of the votes cast at the election, though such alien be declared ineligible to the office upon a contest between them, the citizen, who receives a minority of the votes cast, cannot be declared entitled to the office; but it must be held to be vacant.

This Court held that, because Swinburne was ineligible as an alien to hold office as the Clerk of the Circuit Court of Kanawha, no one was legally elected at the election, or was entitled by reason thereof to hold the office, and that the vacancy in the office must be filled in a manner prescribed by law. 20 W.Va. at 138.

In a later case, *State ex rel. Depue v. Matthews*, 44 W.Va. 372, 29 S.E. 994 (1898), we again recognized that the disqualification of the candidate with the highest number of votes does not inure to the benefit of the other candidate. We held in syllabus point 2 of *Depue:*

Where two parties are opposing candidates for the office of sheriff, and the one receiving the highest number of votes for the office disqualifies himself from holding the same by contracting to farm or sell the office or a portion thereof, such fact does not confer any interest

that under *W.Va.Code*, 3–5–9, the certification statute for primary elections, the secretary of state

is charged with certifying only those persons who are 'entitled to have their names printed on any political party ballot.' The *Code* provision does not set forth how the Secretary of State shall determine entitlement, but it may

be reasonably inferred that the Secretary should refuse to place on the ballot any person whose certificate of candidacy shows ineligibility on its face.

**7.** By using the term "alien," the Court is referring to a person of foreign birth who has not been naturalized or admitted to citizenship.

in the office on the party receiving the minority of the votes cast at the election.

Clearly, by virtue of the provisions of *W.Va.Code,* 3–5–19 [1991] and in light of this Court's holdings in *Dryden* and *Depue,*[8] the petitioner is not entitled to be certified by the secretary of state as the Democratic nominee for the office of senator for the 16th Senatorial District.

## V

We have consistently recognized that mandamus lies to test the eligibility to office of a candidate in either a primary or general election. Syl. pt. 2, *State ex rel. Cohen v. Manchin,* 175 W.Va. 525, 336 S.E.2d 171 (1984); Syl. pt. 1, *White, supra;* syl. pt. 1, *State ex rel. Dostert v. Riggleman,* 155 W.Va. 808, 187 S.E.2d 591 (1972). Although we have found that the five-year citizenship requirement of *W.Va. Const.* art. IV, § 4 is constitutional, the petitioner in the present case is not entitled to the ultimate relief sought and thus, we deny the petitioner's request for a writ of mandamus. Therefore, as a result of Mr. Russell's ineligibility, the executive committee for the political division in which the vacancy has occurred shall appoint a nominee and certify the name of such nominee to the secretary of state. The secretary of state will then have the duty to certify the name of that nominee to the clerk of the circuit court of each county in which the candidate is to be voted for.

Writ denied.

---

**8.** The petitioner contends that the cases of *Dryden* and *Depue* are distinguishable from the present case because the ineligible candidates in those cases had already taken office after the general election. However, we believe the same reasoning that the disqualification of the candidate receiving the highest number of votes does not inure to the benefit of the candidate receiving the next highest number of votes applies in either a primary or general election.