619 S.E.2d 235

**Gary TILLIS, Chairman, Putnam County Democratic Executive Committee, Appellant,**

**v.**

**Donald WRIGHT, Putnam County Circuit Clerk and Ex–Officio Chairman of the Board of Ballot Commissioners in and for Putnam County; Ruth Ann Maynard and Judith F. Jeffries as Members of the Board of Ballot Commissioners in and for Putnam County; and Raymond Joseph Haynes, Appellees.**

No. 32044.

Supreme Court of Appeals of West Virginia.

Submitted Oct. 26, 2004.

Decided July 7, 2005.

Ancil G. Ramey, Hannah B. Curry, Steptoe & Johnson, PLLC, Charleston, West Virginia, Frank M. Armada, Hurricane, West Virginia, Attorneys for the Appellant.

Mark A. Sorsaia, Prosecuting Attorney, Jennifer D. Scragg, Assistant Prosecuting Attorney, Putnam County Prosecutor's Office, Winfield, West Virginia, Attorneys for the Appellees, Putnam County Board of Ballot Commissioners and its members.

Michael B. Stuart, Spilman, Thomas & Battle, PLLC, Charleston, West Virginia, Attorney for the Appellee, Raymond Joseph Haynes.

DAVIS, Justice:[1]

The appellant herein and petitioner below, Gary Tillis (hereinafter "Mr. Tillis"), in his capacity as the Chairman of the Putnam County Democratic Executive Committee (hereinafter "Democratic Committee"),[2] appeals from a ruling rendered October 1, 2004, by the Circuit Court of Putnam County. By the terms of that ruling, the circuit court determined that a vacancy, as contemplated

---

1. This Opinion memorializes our prior disposition of this matter by order entered October 26, 2004, wherein we affirmed the October 1, 2004, ruling of the Circuit Court of Putnam County, due to the expedited review necessitated by the impending November 2, 2004, general election. Because we decided this matter during the Court's September 2004 Term, the membership of the Court included Justice McGraw, who participated in and dissented from the Court's deci-

sion. Justice Benjamin, whose term did not begin until January 2005, did not participate in either the consideration or decision of this matter.

2. As of this writing, Mr. Tillis is no longer the Chairman of the Putnam County Democratic Executive Committee, but, to maintain consistency with the proceedings had in the lower court, we will continue to refer to him in this manner.

by W. Va.Code § 3–5–19(a)(4) (2003) (Supp. 2004),[3] had been created in the Republican Party's nominee for the Office of Putnam County Commissioner, thereby permitting the appointment of the appellee herein and respondent below,[4] Raymond Joseph Haynes (hereinafter "Mr. Haynes"), to fill such vacancy. On appeal to this Court, Mr. Tillis complains that the circuit court erred (1) by ruling that former Republican Party candidate, Cathern Addington (hereinafter "Ms. Addington"), had been properly appointed as a candidate for the Office of Putnam County Commissioner and (2) by then concluding that the Board of Ballot Commissioners' subsequent refusal to certify her appointment constituted a disqualification pursuant to W. Va.Code § 3–5–19(a)(4) so as to create the aforementioned vacancy. Rather, Mr. Tillis asserts that a vacancy in nomination did not exist at the time Mr. Haynes was appointed, therefore making said nomination invalid. Upon a review of the parties' briefs, the record presented for appellate consideration, and the pertinent authorities, we conclude that Mr. Haynes was properly appointed to fill a vacancy in nomination. Accordingly, we affirm the decision of the Putnam County Circuit Court.

**3.** See *infra* note 7 for the text of W. Va.Code § 3–5–19(a)(4) (2003) (Supp.2004).

**4.** Additional appellees to the instant proceeding, and respondents below, are Donald Wright, Putnam County Circuit Clerk at the time of the facts at issue herein and Ex–Officio Chairman of the Board of Ballot Commissioners in and for Putnam County, and Ruth Ann Maynard and Judith F. Jeffries, as members of the Board of Ballot Commissioners in and for Putnam County. For ease of reference, these parties will be collectively referred to as "the appellees," except where circumstances otherwise dictate individual references.

**5.** Pursuant to W. Va.Code § 3–5–19(a)(3) (2003) (Supp.2004),

 (a) If any vacancy shall occur in the party nomination of candidates for office nominated at the primary election or by appointment under the provisions of section eleven [§ 3–5–11] of this article, the vacancies may be filled, subject to the following requirements and limitations:
 . . . .
 (3) If a vacancy in nomination is caused by the failure of a candidate to file for an office,

## I.

## FACTUAL AND PROCEDURAL HISTORY

Because no Republican candidate had filed for the office of Putnam County Commissioner, W. Va.Code § 3–5–19(a)(3)[5] authorized the Putnam County Republican Executive Committee (hereinafter "Republican Committee") to appoint a nominee therefor for the November 2004 general election. The deadline to make such an appointment was May 6, 2004. *See* W. Va.Code § 3–5–19(a)(3). On May 5, 2004, and pursuant to W. Va.Code § 3–5–19(a)(3), the Republican Committee filed with the Putnam County Circuit Clerk an "Appointment by Executive Committee to Fill Vacancy on the General Election Ballot" listing Cathern Ann Addington as its nominee. The same day, Ms. Addington filed a "Certificate of Announcement" with the circuit clerk certifying that she was a member of the Republican Party and had been a member of that party for at least sixty days prior to filing, as required by W. Va.Code § 3–5–7(b)(6) (1998) (Repl.Vol. 2002).[6] The primary election was conducted on May 11, 2004.

or by withdrawal of a candidate no later than the third Tuesday following the close of candidate filing pursuant to the provisions of section eleven [§ 3–5–11] of this article, a nominee may be appointed by the executive committee and certified to the proper filing officer no later than the Thursday preceding the primary election.

**6.** In accordance with W. Va.Code § 3–5–7(b)(6) (1998) (Repl.Vol.2002),

 (b) The certificate of announcement shall be in a form prescribed by the secretary of state on which the candidate shall make a sworn statement before a notary public or other officer authorized to give oaths, containing the following information:
 . . . .
 (6) For partisan elections, the name of the candidate's political party, and a statement that the candidate is a member of and affiliated with that political party as is evidenced by the candidate's current registration as a voter affiliated with that party, and that the candidate has not been registered as a voter affiliated with any other political party for a period of sixty days before the date of filing the announcement[.]

On May 14, 2004, Mr. Tillis filed a complaint with the Putnam County Board of Ballot Commissioners (hereinafter "the Board") asserting that Ms. Addington had not been a member of the Republican Party for the requisite period. A review of the relevant voter registration records revealed that Ms. Addington had been a registered member of the Democratic Party since July 2, 1996. However, in an affidavit submitted by Ms. Addington, she explained that, in 2000, she had completed a voter registration form to change her party affiliation from the Democratic Party to the Republican Party. Ms. Addington stated that, at the time she completed her candidacy paperwork, she retained a good faith belief that she was a member of the Republican Party and was shocked to learn otherwise.

On May 19, 2004, the Board convened to consider the complaint and refused to certify Ms. Addington's candidacy based upon her certified voter registration evidencing that she was registered as a Democrat at the time of her nomination and throughout the sixty days immediately preceding that date. The Board based its refusal to certify Ms. Addington on W. Va.Code § 3–5–7(b)(9) (1998) (Repl.Vol.2002), which states that

> [t]he secretary of state or *the board of ballot commissioners,* as the case may be, *may refuse to certify the candidacy* or remove the certification of the candidacy *upon receipt of a certified copy of the voter's registration record of the candidate evidencing that the candidate was registered as a voter in a party other than the one named in the certificate of announcement during the sixty days immediately preceding the filing of the certificate:* Provided, That unless a signed formal complaint of violation of this section and the certified copy of the voter's registration record of the candidate be filed with the officer receiving that candidate's certificate of announcement no later than ten days following the close of the filing period, the candidate shall not be refused certification for this reason.

(Emphasis added).

Following the Board's failure to certify Ms. Addington as the Republican nominee for Putnam County Commissioner, the Republican Committee, on June 24, 2004, and pursuant to W. Va.Code § 3–5–19(a)(4),[7] voted to name Raymond Joseph Haynes as the Republican Party's nominee to the office of Putnam County Commissioner in place of Ms. Addington. On June 28, 2004, the Republican Committee filed with the circuit clerk a new "Appointment by Executive Committee to Fill a Vacancy on the General Election Ballot" listing Mr. Haynes as its nominee and claiming that a vacancy had been created because the Putnam County Board of Ballot Commissioners had refused to certify Ms. Addington based upon her disqualification by reason of improper party affiliation.[8]

---

7. W. Va.Code § 3–5–19(a)(4) (2003) (Supp.2004) permits the filling of a vacancy in nomination when a vacancy occurs due to a candidate's disqualification. By the terms of W. Va.Code § 3–5–19(a)(4),

> (a) If any vacancy shall occur in the party nomination of candidates for office nominated at the primary election or by appointment under the provisions of section eleven [§ 3–5–11] of this article, the vacancies may be filled, subject to the following requirements and limitations:
> ....
> (4) *If a vacancy in nomination is caused by the disqualification of a candidate and the vacancy occurs not later than eighty-four days before the general election, a nominee may be appointed by the executive committee and certified to the proper filing officer not later than seventy-eight days before the general election.* A candidate may be determined ineligible if a written request is made by an individual with information to show a candidate's ineligibility to the state election commission no later than ninety-five days before the general election explaining grounds why a candidate is not eligible to be placed on the general election ballot or not eligible to hold the office, if elected. The state election commission shall review the reasons for the request. If the commission finds the circumstances warrant the disqualification of the candidate, the commission may authorize appointment by the executive committee to fill the vacancy. Upon receipt of the authorization a nominee may be appointed by the executive committee and certified to the proper filing officer no later than seventy-eight days before the general election.

(Emphasis added).

8. On the same day, Mr. Haynes properly filed a "Candidate's Certificate of Announcement" with the circuit clerk.

Mr. Tillis then filed a petition for a writ of mandamus in the Putnam County Circuit Court on August 23, 2004, challenging Mr. Haynes' nomination. In his petition, Mr. Tillis asserted that the Board's refusal to certify a candidate, *i.e.*, Ms. Addington, did not constitute a vacancy as contemplated by W. Va.Code § 3–5–19. By contrast, the named respondents argued that because the Board's refusal to certify Ms. Addington's nomination was premised on a disqualification, a vacancy had therefore been created.

On September 30, 2004, the circuit court conducted a hearing, and, on October 1, 2004, the court ruled from the bench that a vacancy had been created in the Republican Party's nomination for the Office of Putnam County Commissioner when the Board rejected Ms. Addington's candidacy. Thus, the circuit court held that the nomination of Mr. Haynes was proper. On October 4, 2004, Mr. Tillis filed a petition for appeal with this Court and requested expedited review in light of the rapidly approaching November 2, 2004, general election. We granted the appeal on October 21, 2004, and ordered the case to be submitted on briefs without oral argument on October 26, 2004.[9] Thereafter, this Court issued an order on October 26, 2004, affirming the ruling of the Putnam County Circuit Court, with a full opinion to follow in due course.

## II.

## STANDARD OF REVIEW

The ruling from which Mr. Tillis now appeals involves the circuit court's interpretation and application of W. Va.Code § 3–5–19 to the particular facts of this case. Thus we refer to the standard of review for election cases we previously have enunciated which directs that,

> [w]hile the appellate court may examine the record in the review of election contests in order to reach an independent conclusion, it merely determines whether the conclusions of law are warranted by the findings of fact, and it will not, as a general rule, disturb findings of fact on

conflicting evidence unless such findings are manifestly wrong or against the weight of the evidence.

Syl. pt. 6, *Brooks v. Crum*, 158 W.Va. 882, 216 S.E.2d 220 (1975). *See also* Syl. pt. 2, *Walker v. West Virginia Ethics Comm'n*, 201 W.Va. 108, 492 S.E.2d 167 (1997) ("In reviewing challenges to the findings and conclusions of the circuit court, we apply a two-prong deferential, standard of review. We review the final order and the ultimate disposition under an abuse of discretion standard, and we review the circuit court's underlying factual findings under a clearly erroneous standard. Questions of law are subject to a *de novo* review.").

Furthermore, we accord plenary review to questions of law, including the interpretation of statutory provisions: "Interpreting a statute or an administrative rule or regulation presents a purely legal question subject to *de novo* review." Syl. pt. 1, *Appalachian Power Co. v. State Tax Dep't of West Virginia*, 195 W.Va. 573, 466 S.E.2d 424 (1995). *Accord* Syl. pt. 1, *Chrystal R.M. v. Charlie A.L.*, 194 W.Va. 138, 459 S.E.2d 415 (1995) ("Where the issue on an appeal from the circuit court is clearly a question of law or involving an interpretation of a statute, we apply a *de novo* standard of review.").

With these standards of review in mind, we proceed to consider the parties' arguments.

## III.

## DISCUSSION

The primary issue presented for resolution by this appeal is whether the Board's decision not to certify Ms. Addington constituted a "disqualification" as contemplated by W. Va.Code § 3–5–19(a)(4), and, therefore, created a vacancy in the Republican Party's nominee for the office of Putnam County Commissioner. Before this Court, Mr. Tillis contends that the Board refused to certify, rather than disqualified, Ms. Addington, and thus no vacancy in nomination was created pursuant to W. Va.Code § 3–5–19(a)(4). Ad-

9. Due to the short amount of time before the election, the Court requested the parties to submit the case on briefs and declined to hear oral arguments.

ditionally, Mr. Tillis claims that the circuit court erred by failing to distinguish between vacancies in candidacy, which are governed by W. Va.Code § 3–5–11, and vacancies in nominations, which are governed by W. Va. Code § 3–5–19. The appellees refute Mr. Tillis' assertions and urge this Court to adopt the circuit court's ruling.

We begin our analysis by clarifying which statute is dispositive of the controversy presented by this appeal. On the one hand, Mr. Tillis argues that W. Va.Code § 3–5–11(c) (1991) (Repl.Vol.2002) [10] governs these proceedings, and, because the Republican Committee did not appoint a qualified Republican candidate by "the second Friday following the close of filing," W. Va.Code § 3–5–11(c), i.e., February 13, 2004,[11] the Committee was not thereafter authorized to fill a vacancy in nomination pursuant to W. Va.Code § 3–5–19(a)(3) [12]. On the other hand, the Appellees argue that these two provisions actually govern appointments for different reasons and, because the Republican Committee has complied with the requisite requirements, its appointments were proper. In this regard, the Appellees suggest that W. Va.Code § 3–5–11(c) contemplates appointments for vacancies in candidacies, who would appear on the primary election ballot, whereas W. Va.Code § 3–5–19(a)(3) governs vacancies in nominations, which nominees will appear on the general election ballot. According to W. Va. Code § 3–5–19(a)(3), appointments to vacancies caused by the failure of any candidates to file for that particular office are required to be filed by "the Thursday preceding the primary election," which was May 6, 2004, in this case and by which date the Republican Committee had appointed Ms. Addington to fill the vacancy in nomination for the office of Putnam County Commissioner. We agree with the Appellees' interpretation of these statutes insofar as it is consistent with our rules of statutory construction.

While the preamble to W. Va.Code § 3–5–19(a)(3) suggests that appointments are limited to only vacancies in candidates for the primary election and for the reasons specified in W. Va.Code § 3–5–11, the specific language of subsection (3) indicates that vacancy appointments may be made as late as "the Thursday preceding the primary election," W. Va.Code § 3–5–19(a)(3). In light of the fact that early voting and voting by absentee voters could likely occur, if not conclude, by this date, it is apparent that W. Va.Code § 3–5–19(a)(3) contemplates that such candidates will be placed not on the primary election ballot but on the ballot for the general election. This construction accords with our prior recognition that specific statutory language generally takes precedence over more general statutory provisions. "The general rule of statutory construction requires that a specific statute be given precedence over a general statute relating to the same subject matter where the two cannot be reconciled." Syl. pt. 1, UMWA by Trumka v. Kingdon, 174 W.Va. 330, 325 S.E.2d 120 (1984). Accord Bowers v. Wurzburg, 205 W.Va. 450, 462, 519 S.E.2d 148, 160 (1999) ("Typically, when two statutes govern a particular scenario, one being specific and one being general, the specific provision prevails." (citation omitted)). Moreover, we previously have held that election statutes should be afforded a liberal construction: "Statutes relating to vacancies on an election ballot ordinarily should be liberally construed in order to serve the legislative

10. W. Va.Code § 3–5–11(c) (1991) (Repl.Vol. 2002) directs that

[i]f after the time is closed for announcing as a candidate there is a vacancy on the ballot caused by failure of any person of a party to file for each available seat of each available office, the executive committee of the party for the political division within which such candidate was to be voted for, or its chair if the committee fails to act, may fill the vacancy and certify the candidate named to the appropriate filing officer. Certification of the appointment by the executive committee or its chair, the candidate's certificate of announcement, and

the filing fee must be received by the appropriate filing officer as follows: For an appointment by an executive committee, no later than the second Friday following the close of filing, for an appointment by its chair, no later than the third Tuesday following the close of filing. A candidate appointed to fill a vacancy on the ballot under this subsection shall have his or her name printed on the primary ballot for that party.

11. Filing closed on January 31, 2004.

12. See supra note 5.

policy of providing a full selection of candidates for the voters." Syl. pt. 1, *State ex rel. Cravotta v. Hechler*, 187 W.Va. 790, 421 S.E.2d 698 (1992). Therefore, we conclude that the Republican Committee's initial appointment of Ms. Addington properly complied with the temporal requirements of W. Va.Code § 3–5–19(a)(3).

■ The question then becomes whether the Board's refusal to certify Mr. Addington's candidacy constitutes a disqualification so as to permit the Republican Committee to appoint Mr. Haynes pursuant to W. Va.Code § 3–5–19(a)(4). Determinative of this question is the meaning and interpretation of W. Va.Code § 3–5–19 (2003) (Supp.2004). Generally, W. Va.Code § 3–5–19 provides for the appointment of party nominations of candidates for office and sets forth requirements and limitations in filling openings. Specifically, subsection (a) directs that

[i]f any vacancy shall occur in the party nomination of candidates for office nominated at the primary election or by appointment under the provisions of section eleven of this article, the vacancies may be filled, subject to the following requirements and limitations[.]

The statute then identifies specific requirements and limitations in filling vacancies under certain circumstances, including when a candidate (1) fails to file for office;[13] (2) withdraws no later than the third Tuesday following the close of candidate filing;[14] (3) is disqualified no later than eighty-four days before the general election;[15] (4) becomes incapacitated no later than eighty-four days before the general election;[16] (5) withdraws, because of extenuating personal circumstances, no later than eighty-four days before the general election;[17] or dies no later than twenty-five days before the general election.[18]

The relevant subdivision that applies to this case is § 3–5–19(a)(4), which focuses on vacancies in nomination caused by the disqualification of a candidate:

*If a vacancy in nomination is caused by the disqualification of a candidate and the vacancy occurs not later than eighty-four days before the general election, a nominee may be appointed by the executive committee and certified to the proper filing officer not later than seventy-eight days before the general election.* A candidate may be determined ineligible if a written request is made by an individual with information to show a candidate's ineligibility to the state election commission no later than ninety-five days before the general election explaining grounds why a candidate is not eligible to be placed on the general election ballot or not eligible to hold the office, if elected. The state election commission shall review the reasons for the request. If the commission finds the circumstances warrant the disqualification of the candidate, the commission may authorize appointment by the executive committee to fill the vacancy. Upon receipt of the authorization a nominee may be appointed by the executive committee and certified to the proper filing officer no later than seventy-eight days before the general election.

W. Va.Code § 3–5–19(a)(4) (2003) (Supp. 2004) (emphasis added). In *State ex rel. Harden v. Hechler*, 187 W.Va. 670, 421 S.E.2d 53 (1992), we interpreted this statutory language and held:

When a vacancy in nomination occurs as a result of the disqualification of the candidate not later than eighty-four days before the general election, *W. Va.Code*, 3–5–19 [1991] provides that a nominee may be appointed by the executive committee of the political party for the political subdivision in which the vacancy occurs and certified to the proper filing officer no later than seventy-eight days before the general election.

---

13. W. Va.Code § 3–5–19(a)(3).

14. W. Va.Code § 3–5–19(a)(3).

15. W. Va.Code § 3–5–19(a)(4).

16. W. Va.Code § 3–5–19(a)(5).

17. W. Va.Code § 3–5–19(a)(6).

18. W. Va.Code § 3–5–19(a)(7).

Syl. pt. 2, *Harden*, 187 W.Va. 670, 421 S.E.2d 53. Nevertheless, we have not examined the precise meaning of the words employed in this enactment. Thus, before applying this provision to the facts before us, we must first determine its meaning.

When considering the meaning of legislative language, we have held that "the primary object in construing a statute is to ascertain and give effect to the intent of the Legislature." Syl. pt. 1, *Smith v. State Workmen's Comp. Comm'r*, 159 W.Va. 108, 219 S.E.2d 361 (1975). Thereafter, "[o]nce the legislative intent underlying a particular statute has been ascertained, we proceed to consider the precise language thereof." *State ex rel. McGraw v. Combs Servs.*, 206 W.Va. 512, 518, 526 S.E.2d 34, 40 (1999). In this regard, "[j]udicial interpretation of a statute is warranted only if the statute is ambiguous[.]" Syl. pt. 1, in part, *Ohio County Comm'n v. Manchin*, 171 W.Va. 552, 301 S.E.2d 183 (1983). Thus, "[a] statutory provision which is clear and unambiguous and plainly expresses the legislative intent will not be interpreted by the courts but will be given full force and effect." Syl. pt. 2, *State v. Epperly*, 135 W.Va. 877, 65 S.E.2d 488 (1951). *Accord* Syl. pt. 2, *Crockett v. Andrews*, 153 W.Va. 714, 172 S.E.2d 384 (1970) ("Where language of a statute is free from ambiguity, its plain meaning is to be accepted and applied without resort to interpretation."). *Cf.* Syl. pt. 1, *Farley v. Buckalew*, 186 W.Va. 693, 414 S.E.2d 454 (1992) ("A statute that is ambiguous must be construed before it can be applied."). More specifically, "[e]lection laws are statutory and where clear and unambiguous require no construction by the Court." Syl. pt. 1, *State ex rel. Holt v. Davis*, 156 W.Va. 269, 197 S.E.2d 100 (1972). *See also* Syl. pt. 2, *State ex rel. Brewer v. Wilson*, 151 W.Va. 113, 150 S.E.2d 592 (1966) ("The power of the legislature to regulate the nomination and election of candidates for public office and to prescribe essential qualifications to be possessed by candidates in order to be eligible to be nominated or elected is plenary within constitutional limitations."), *overruled on other grounds by Marra v. Zink*, 163 W.Va. 400, 256 S.E.2d 581 (1979).

A review of the statutory provision at issue herein suggests that the language employed by the Legislature in enacting W. Va.Code § 3–5–19(a)(4) is plain and unambiguous. In subsection (a)(4), the Legislature has clearly stated that "[i]f a vacancy in nomination is caused by the disqualification of a candidate ... a nominee may be appointed by the executive committee ...." It is clear from this language that the Legislature intended to allow a subsequent nomination to be made if a vacancy was created due to the disqualification of a candidate. Nevertheless, in granting this permission, the Legislature has failed to define the terms "vacancy" and "disqualification". Therefore, in the absence of a legislative definition of these terms, we will defer to their plain, ordinary meaning. "In the absence of any definition of the intended meaning of words or terms used in a legislative enactment, they will, in the interpretation of the act, be given their common, ordinary and accepted meaning in the connection in which they are used." Syl. pt. 1, *Miners in Gen. Group v. Hix*, 123 W.Va. 637, 17 S.E.2d 810 (1941), *overruled on other grounds by Lee–Norse Co. v. Rutledge*, 170 W.Va. 162, 291 S.E.2d 477 (1982). *Accord* Syl. pt. 2, in part, *State v. Scott*, 36 W.Va. 704, 15 S.E. 405 (1892) ("[I]t is a settled rule of construction, to construe words which the legislature has used in such manner as will advance the intention of the act, prevent inconvenience, and avoid conflict with settled policy.").

The first of these undefined terms, "vacancy," we previously have had occasion to consider and construe in our prior case of *State v. Scott*, 36 W.Va. 704, 15 S.E. 405 (1892). In *Scott*, we were called upon to consider the meaning of the term "vacancy" in the context of the appointment of jury commissioners to their newly created office. Construing this word, we concluded that "'vacancy'" is "'a place which is empty.'" *Scott*, 36 W.Va. at 711, 15 S.E. at 407 (quoting Black's Law Dictionary 1209 (1st ed. 1891)). We further recognized "'vacancy'" as "mean[ing] 'empty' and 'void' or 'unoccupied.'" *Scott* 36 W.Va. at 711, 15 S.E. at 408 (quoting *Walsh v. Com.*, 89 Pa. 419, 425 (1879)). Thus, it is apparent that a vacancy

in nomination signifies that, at the time of the vacancy, the candidacy for that particular office is empty and unoccupied, *i.e.*, there are no candidates for that particular office. According to the terms of W. Va.Code § 3–5–19(a), numerous circumstances may result in such a vacancy including the disqualification of a candidate. *See* W. Va.Code § 3–5–19(a)(4).

We have not, however, previously considered the meaning to be accorded to the term "disqualification." Absent legislative guidance in this regard, we will refer to the term's common, ordinary construction to discern the meaning of the term "disqualification" as it applies to vacancies in nominations. *See, e.g.,* Syl. pt. 1, *Miners in Gen. Group v. Hix*, 123 W.Va. 637, 17 S.E.2d 810; Syl. pt. 2, in part, *State v. Scott*, 36 W.Va. at 704, 15 S.E. at 405. In this regard, "disqualification" has been defined to mean:

> To divest or deprive of qualifications; to incapacitate; to render ineligible or unfit, as in speaking of the "disqualification" of a judge by reason of his interest in the case, of a juror by reason of his holding a fixed preconceived opinion, or of a candidate for public office by reason of non-residence, lack of statutory age, previous commission of a crime, etc.

Black's Law Dictionary 472 (6th ed.1990). *Accord Ballentine's Law Dictionary* 359 (3d ed.1969) (understanding "disqualification" to signify a "[w]ant of qualification, especially for a public office .... It may be from want of an abstract qualification, such as a requirement for education ...."). "Disqualification" has further been construed as "something that makes one ineligible." Black's Law Dictionary 485 (7th ed.1999). *See also* I *Bouvier's Law Dictionary* 888 (8th ed.1984) (defining "disqualify" as meaning "[t]o incapacitate, to disable, to divest or deprive of qualifications" (citation omitted)).

 Thus, it is evident that the term "disqualification" as employed by W. Va.Code § 3–5–19(a)(4) signifies that the named candidate is not eligible to seek the office for which he/she is a candidate. In this regard, we previously have considered some of the facts and circumstances that might render a proposed candidate ineligible for the office

which he/she seeks. Most similar to the case *sub judice* is our prior decision in *State ex rel. Harden v. Hechler*, 187 W.Va. 670, 421 S.E.2d 53 (1992), in which a candidate for state senate had not satisfied the five-year citizenship requirement prior to running in the election. This Court recognized that because the candidate had not met the five-year citizenship requirement, he was *ineligible* to hold the office of state senator. *Id.,* 187 W.Va. at 673, 421 S.E.2d at 56. Throughout the opinion, we continuously referred to the candidate's "ineligibility" as being a "disqualification." *Id.* This Court made it clear that the candidate's failure to satisfy the five-year citizenship requirement rendered him ineligible, therefore disqualifying him from taking office pursuant to W. Va.Code § 3–5–19(a)(4). *Id.,* 187 W.Va. at 674, 421 S.E.2d at 57.

We also found a candidate to be ineligible in *State ex rel. Summerfield v. Maxwell*, 148 W.Va. 535, 135 S.E.2d 741 (1964). That case involved a candidate who was running for the office of prosecuting attorney, but was found to be an ineligible candidate because he was not a licensed attorney at the time of the election. *Id.* Once again, this Court used the terms "qualified" and "eligible" interchangeably throughout the opinion, signaling that their meanings were similar, if not the same. *Id.* For instance, we explained:

> A board of ballot commissioners has not "legally" performed the duties required of it ... until it has placed upon such ballot candidates *eligible* to be nominated ... and where this Court has found that a person is not a *qualified* candidate to be voted upon in such election, the board has not "legally" performed its duties ... until it has removed his name from the ballot as directed by the Court.

148 W.Va. at 542–43, 135 S.E.2d at 747 (emphasis added). Thus, because the candidate was ineligible, he was disqualified from participating in the election.

 Despite our need to refer to authorities extraneous to the express statutory language to ascertain the meaning of the words employed therein, we nonetheless find W. Va.Code § 3–5–19(a)(4) to be plain and unambiguous. In this regard, the Legislature has placed no limitations upon what

factor(s) may render one ineligible for candidacy so as to constitute a disqualification. Because there is no limit as to what constitutes a disqualification or what types of disqualifications may exist, it is apparent that anything making a candidate ineligible, unfit, or unqualified for the office which he/she seeks is necessarily included as a disqualification under W. Va.Code § 3–5–19(a)(4). This construction likewise is consistent with our prior cases considering a candidate's eligibility. *See State ex rel. Harden v. Hechler,* 187 W.Va. 670, 421 S.E.2d 53 (1992); *State ex rel. Summerfield v. Maxwell,* 148 W.Va. 535, 135 S.E.2d 741 (1964). Therefore, we hold that a candidate is disqualified pursuant to W. Va.Code § 3–5–19(a)(4) (2003) (Repl.Vol. 2004) when any factor renders him/her ineligible, unfit, or unqualified for the office to which he/she seeks to be elected.

Applying this holding to the facts presently before us, we are of the opinion that the Board's refusal to certify Ms. Addington's nomination constituted a disqualification as contemplated by W. Va.Code § 3–5–19(a)(4) and, therefore, created a vacancy in nomination. W. Va.Code § 3–5–19(a)(4) specifically directs that in order to create a vacancy in nomination, the candidate must have been disqualified. According to the ruling of the Board of Ballot Commissioners, the Board

> unanimously agreed to REFUSE TO CERTIFY the candidacy of Cathern A. Addington to fill the vacancy in nomination of the Republican Party for the office of the Putnam County Commission based upon the certified voter registration evidencing that Ms. Addington was registered with the Putnam County Clerk as a Democrat on May 5, 2004, and also throughout the sixty (60) days immediately preceding said date.

Although the Board did not expressly use the term "disqualification" in their ruling, it is obvious that Ms. Addington lacked the appropriate qualifications to permit the Commission to refuse her certification.

■ Under the facts of this case, it is evident that Ms. Addington was ineligible, unfit and unqualified to run for the position. Although the reason for her disqualification was not due to "non-residence, lack of statutory age, ... previous commission of a crime"[19] or failure to satisfy other eligibility requirements such as licensure,[20] Ms. Addington's improper party affiliation likewise constitutes a valid basis for disqualification under W. Va.Code § 3–5–19(a)(4). Had Ms. Addington been named as a candidate for a non-partisan office that was not based upon the candidate's political affiliation, a different result might be obtained. Those are not the facts before us, however. In the events leading up to the instant appeal, Ms. Addington, by accepting the Republican Committee's nomination for the office of Putnam County Commissioner and announcing her candidacy therefor, held herself out as a member of the Republican Party. It goes without saying that her actual affiliation with the Democratic Party renders her ineligible to continue her candidacy on the Republican Party's ticket. As such, the circuit court properly determined that the Board's refusal to certify Ms. Addington's candidacy due to her party status ineligibility constituted a disqualification as contemplated by W. Va.Code § 3–5–19(a)(4) and therefore created a vacancy in nomination. The circuit court also properly found that, in light of the resultant vacancy in nomination, the Republican Committee had the authority to, and properly did, appoint Mr. Haynes to fill such vacancy pursuant to the directives of W. Va.Code § 3–5–19(a)(4). Our prior holding in *State ex rel. Zagula v. Grossi,* 149 W.Va. 11, 138 S.E.2d 356 (1964), also confirms the propriety of the Republican Committee's appointment of Mr. Haynes to fill the vacancy created by Ms. Addington's disqualification: "If a vacancy shall occur after the primary election in the party nomination of a candidate for a county office, the duly elected county executive committee may, at a reasonable time before the general election, fill such vacancy on the

---

**19.** Black's Law Dictionary 472 (6th ed.1990). *See also State ex rel. Harden v. Hechler,* 187 W.Va. 670, 421 S.E.2d 53 (1992) (finding ineligibility due to failure to satisfy citizenship requirement).

**20.** *See State ex rel. Summerfield v. Maxwell,* 148 W.Va. 535, 135 S.E.2d 741 (1964) (determining candidate to be ineligible due to failure to satisfy licensing requirements of office).

official ballot to be used at the general election." Syl. pt. 1, *Zagula,* 149 W.Va. 11, 138 S.E.2d 356. Accordingly, we affirm the circuit court's ruling.

## IV.

## CONCLUSION

For the foregoing reasons, we find that Mr. Haynes was properly nominated pursuant to W. Va.Code § 3–5–19(a)(4) as a Republican candidate for the Office of Putnam County Commissioner. Accordingly, the October 1, 2004, decision of the Circuit Court of Putnam County is hereby affirmed.

Affirmed.

Justice McGRAW dissents.