IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

January 2023 Term

FILED

June 13, 2023

released at 3:00 p.m.
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

No. 22-0094

LOYD FRANKLIN RANSOM, JR.,
Petitioner,

v.

GUARDIAN REHABILITATION SERVICES, INC.,
and GUARDIAN ELDER CARE AT FAIRMONT, LLC,
Respondents.

Appeal from the Circuit Court of Marion County
The Honorable David R. Janes, Judge
Case No. CC-24-2019-C-93

REVERSED AND REMANDED

Submitted:  May 9, 2023
Filed:  June 13, 2023

Drew M. Capuder, Esq.
Capuder Fantasia PLLC
Fairmont, West Virginia
Counsel for Petitioner

Kenneth N. Schott, III, Esq.
Mary-Jo Rebelo, Esq.
Burns White LLC
Pittsburgh, Pennsylvania
*Pro Hac Vice*

Phillip T. Glyptis, Esq.
Burns White LLC
Wheeling, West Virginia
Counsel for Respondents

CHIEF JUSTICE WALKER delivered the Opinion of the Court.
JUSTICE WOOTON dissents and may write separately.

SYLLABUS BY THE COURT

1. "A circuit court's entry of summary judgment is reviewed *de novo.*" Syllabus Point 1, *Painter v. Peavy*, 192 W. Va. 189, 451 S.E.2d 755 (1994).

2. "The primary object in construing a statute is to ascertain and give effect to the intent of the Legislature." Syllabus Point 1, *Smith v. State Workmen's Comp. Comm'r*, 159 W. Va. 108, 219 S.E.2d 361 (1975).

3. "Where the language of a statute is free from ambiguity, its plain meaning is to be accepted and applied without resort to interpretation." Syllabus Point 2, *Crockett v. Andrews*, 153 W. Va. 714, 172 S.E.2d 384 (1970).

4. Under The Business Liability Protection Act, West Virginia Code § 61-7-14(d)(3) (2018), no employer may condition employment on an agreement with an employee or a prospective employee prohibiting him from keeping a legal firearm locked inside or locked to a motor vehicle in a parking lot when the firearm is kept for lawful purposes.

WALKER, Chief Justice:

After he was fired for having his legally-owned firearm locked inside his car on company property, which violated a workplace policy, Loyd Franklin Ransom, Jr., sued his employer for unlawful discharge under the West Virginia Business Liability Protection Act[1] and for wrongful discharge under *Harless*.[2] Because questions of material fact remain regarding whether the employer conditioned Mr. Ransom's initial hire, or continued employment following the incident in question, on an agreement to comply with a firearm policy inconsistent with the Act, we reverse the circuit court's order granting summary judgment in the employer's favor and remand this case for further proceedings.

## I. FACTUAL AND PROCEDURAL BACKGROUND

On October 3, 2018, Mr. Ransom began working as a licensed occupational therapist assistant for Guardian Rehabilitation Services, Inc., at its Fairmont Healthcare and Rehabilitation Center. He was fired just a few weeks later after a coworker reported to management that Mr. Ransom had a firearm in his car.

---

[1] W. Va. Code § 61-7-14 (2018).

[2] *See* Syl., *Harless v. First Nat'l Bank in Fairmont*, 162 W. Va. 116, 246 S.E.2d 270 (1978) ("The rule that an employer has an absolute right to discharge an at will employee must be tempered by the principle that where the employer's motivation for the discharge is to contravene some substantial public policy principle, then the employer may be liable to the employee for damages occasioned by this discharge.").

1

Mr. Ransom drove to work early on October 22, 2018. He parked in Guardian's parking lot beside the employee smoking area. When he was locking his car, Mr. Ransom realized that he had forgotten to remove his firearm, an AR-15 rifle, from his vehicle the night before. He leaned the firearm against the seat of his car with the butt of the firearm on the car's floorboard and partially covered it with a jacket and laptop case before entering the workplace. Around lunch time, Guardian's Director of Rehabilitation, Kirstein Smith, told Mr. Ransom that another employee reported seeing a firearm in his car; she asked him to take the firearm home and return to work. Mr. Ransom complied with her request and worked the rest of the day.

At the end of the workday on October 22, Ms. Smith and Guardian's Administrator, Beth Harris, called Mr. Ransom into the management office. Betsy Myers, Guardian's Area Manager, joined this meeting by phone. They told Mr. Ransom that he was fired for violating a company policy that prohibited the possession of firearms on company premises. Guardian's employee handbook provided that employees "may not bring any of the following onto the business property: Firearms or weapons of any kind[.]"

In May 2019, Mr. Ransom sued Guardian and Guardian Elder Care at Fairmont, LLC, in the Circuit Court of Marion County.³ He claimed Guardian violated §

---

³ Guardian Elder Care at Fairmont, LLC, held the license to operate Fairmont Healthcare and Rehabilitation Center in Marion County. For the sake of brevity, we refer to these Respondents collectively as Guardian.

2

61-7-14(d)(3) of the Act, which provides that an employer may not "condition employment" on "[a]n agreement with an employee" prohibiting him "from keeping a legal firearm locked inside or locked to a motor vehicle in a parking lot when the firearm is kept for lawful purposes."[4] Mr. Ransom stated that he was the lawful owner of the firearm who kept it in his locked car at work in the employer's parking lot, and that he kept it for lawful purposes. He also brought a *Harless* claim, alleging that his termination of employment violated a substantial public policy recognized in the Act, "that employees are entitled to possess their firearms for a lawful purpose in their locked vehicles parked at their place of work, and that employers may not retaliate against and fire employees for such protected conduct."

In its answer to the complaint, Guardian admitted that Mr. Ransom "was terminated for violation of a workplace policy prohibiting firearms on the property." As an affirmative defense, Guardian stated that Mr. Ransom was terminated lawfully because he "had a firearm in open view in his vehicle parked in a parking lot on the premises at Fairmont Healthcare and Rehabilitation Center." Guardian stated that the Act "only protects an employee regarding his/her possession of a legally owned firearm in a motor vehicle in an employer's parking lot when the firearm is, *inter alia*, out of view[,]" citing a different provision of the Act—§ 61-7-14(d)(1), which provides that no owner of real property may prohibit an employee "from possessing any legally owned firearm, when the

---

[4] W. Va. Code § 61-7-14(d)(3).

3

firearm is[:]  (A) Lawfully possessed; (B) Out of view; (C) Locked inside or locked to a motor vehicle in a parking lot; and (D) When the . . . employee . . . is lawfully allowed to be present in that area."[5]  Guardian did not offer any affirmative defenses specifically directed toward Mr. Ransom's allegation that it violated the Act's employment anti-discrimination provision set forth in § 61-7-14(d)(3), as alleged in his complaint.

In August 2021, Guardian moved for summary judgment, arguing that it did not violate the Act because Mr. Ransom's firearm was not "out of view," again citing § 61-7-14(d)(1).[6]  Guardian also argued that Mr. Ransom's *Harless* claim likewise failed because it was premised on a violation of the Act, which did not occur.  Mr. Ransom filed a motion for partial summary judgment on liability, arguing that the provision of the Act relied on by Guardian was less specific and, therefore, not applicable to his situation.  Mr. Ransom argued that the more specific provision dealing with employment, § 61-7-14(d)(3), says nothing about the firearm having to be out of view.  Because his legally-owned firearm was locked in his car, Mr. Ransom claimed that the Act prohibited Guardian from terminating his employment.  Mr. Ransom also argued that since Guardian was in violation of the Act, he was entitled to summary judgment on his *Harless* claim as well.

---

[5] *Id.*

[6] Guardian relied on Mr. Ransom's deposition testimony as well as its answers to Mr. Ransom's first set of interrogatories, which were not signed or verified.

The circuit court concluded that Guardian did not violate the Act because Mr. Ransom's firearm was in plain view in his car. In a footnote, the circuit court stated that the subsection relied on by each party was "in conflict" with the other. It concluded that while the subsection relied on by Mr. Ransom did not specify that the firearm be out of view, it reasoned that to find otherwise would "obviate" that subsection on which Guardian relied and "lead to an absurd result." Finding no violation of the Act, the circuit court concluded that Mr. Ransom's *Harless* claim lacked any basis. So, it granted Guardian's motion for summary judgment on October 8, 2021.

Mr. Ransom then attempted an appeal of the order to this Court in November 2021. In the order granting summary judgment, Mr. Ransom's name was reflected as "Franklin L. Ransom," his commonly used name, and the name initially designated on his summons and complaint. But his full legal name is Loyd Franklin Ransom, Jr.[7] After this Court refused to docket Mr. Ransom's appeal because of the name discrepancy, he filed a motion with the circuit court under Rule 60(a) of the West Virginia Rules of Civil Procedure to correct his name, arguing clerical mistake. Guardian opposed this motion. The circuit court granted Mr. Ransom's motion and entered an amended order granting

---

[7] Mr. Ransom explains that he overlooked the fact that his lawsuit was filed in the name of Franklin L. Ransom. He says that his correct name was provided to Guardian during his July 16, 2021, deposition, and that he used his correct name in the style of his Amended Opposition to Defendants' Motion for Summary Judgment in September 2021.

5

Guardian's motion for summary judgment on January 10, 2022. Mr. Ransom filed a new appeal of this order.[8]

## II. STANDARD OF REVIEW

---

[8] The delay in obtaining a corrected order caused procedural irregularities in this appeal. Guardian asserts that Mr. Ransom's pursuit of relief under Rule 60(a) with the circuit court did not toll his deadline to perfect his appeal, and that the deadline to perfect his appeal remained February 8, 2022. But Mr. Ransom did not perfect his appeal until May 11, 2022. As a cross-assignment of error, Guardian argues that this Court should dismiss Mr. Ransom's appeal for failure to timely perfect.

In response to the cross-assignment of error, Mr. Ransom moved for an extension of time under Rule 5 of the West Virginia Rules of Appellate Procedure. He argued that good cause exists for several reasons: (1) he is the same person identified in the circuit court's first summary judgment order, (2) he did what was suggested by the Clerk of this Court to resolve the name discrepancy, (3) the circuit court's order granting him relief constituted a final appealable decision, (4) he timely filed a notice of appeal from the first summary judgment order, (5) this Court's order stating that his appeal would not be docketed did not say that his appeal was dismissed, (6) he timely filed his second notice of appeal, and (7) he perfected this appeal in accordance with this Court's scheduling order. Guardian opposed Mr. Ransom's motion, arguing that even if we granted an extension of time to perfect his appeal (which would be limited to two months under Rule 5), it would be futile as it would only allow him until April 8, 2022, to perfect, and he would still be untimely.

Our clerk's office, and ultimately this Court, contributed to the procedural problems Guardian identifies. Instead of refusing to docket Mr. Ransom's appeal in November 2021, the better practice would have been to accept the appeal and allow Mr. Ransom to file a Rule 60(a) motion with the circuit court to correct his name while the appeal was pending, which is clearly allowed by Rule 60(a). We also contributed to this confusion by issuing a scheduling order that stated Mr. Ransom had until May 11, 2022, to file his brief, which caused him to not perfect the appeal timely. So, in the interest of justice, we invoke Rule 2 of the West Virginia Rules of Appellate Procedure, suspend the requirements for perfecting an appeal under Rule 5 for good cause shown, and address the merits of this appeal.

6

Whether the circuit court properly granted summary judgment is a question of law that we review for correctness, granting no deference to its legal conclusions. This Court has held that "[a] circuit court's entry of summary judgment is reviewed *de novo*."[9] We "draw any permissible inference from the underlying facts in the light most favorable to" Mr. Ransom, as he is the party opposing Guardian's motion for summary judgment.[10]

## III. ANALYSIS

The West Virginia Constitution provides that "[a] person has the right to keep and bear arms for the defense of self, family, home and state, and for lawful hunting and recreational use."[11] The Second Amendment to the United States Constitution also protects "the right of the people to keep and bear Arms[.]"[12] In *District of Columbia v. Heller*,[13] the United States Supreme Court held that the "central component" of this right is individual self-defense,[14] a conclusion it reached after examining the text and history of the Second Amendment. Following *Heller*, many states enacted laws protecting gun

---

[9] Syl. Pt. 1, *Painter v. Peavy,* 192 W. Va. 189, 451 S.E.2d 755 (1994).

[10] *Id*. at 192, 451 S.E.2d at 758.

[11] W. Va. Const. art. III, sec. 22.

[12] U.S. Const. amend. II.

[13] 554 U.S. 570 (2008).

[14] *Id*. at 599.

7

owners' rights on the private property of others.[15] West Virginia became one of those states in 2018, when the Legislature enacted the Act. The Act was in effect at the time Guardian hired Mr. Ransom.

Under the Act, an "owner, lessee, or other person charged with the care, custody, and control of real property" may not "prohibit any customer, employee, or invitee from possessing any legally owned firearm," when four conditions are met.[16] The firearm must be: "(A) Lawfully possessed; (B) Out of view; (C) Locked inside or locked to a motor vehicle in a parking lot; and (D) When the customer, employee, or invitee is lawfully allowed to be present in that area."[17] As long as customers, employees, or invitees comply with those requirements, the Act affords them "privacy rights" that the owner, lessee, or person charged with the care, custody, and control of the real property cannot violate by either inquiring about "the presence or absence of a firearm locked inside or locked to a

---

[15] *See* Malerie Leigh Bulot, *"Bring Your Gun to Work" and You're Fired: Terminated Employees' Potential Rights for Violations of Parking Lot Laws*, 78 La. L. Rev. 989, 995 (2018) (discussing the general provisions of several states' "Parking Lot" statutes purporting to protect gun owners' rights on the private property of others).

[16] W. Va. Code § 61-7-14(d)(1).

[17] *Id*. at § 61-7-14(d)(1).

motor vehicle in a parking lot; or . . . [b]y conducting an actual search of a motor vehicle in a parking lot to ascertain the presence of a firearm within the vehicle[.]"[18]

The West Virginia Attorney General is authorized to enforce the Act by seeking injunctive relief and civil penalties of up to $5,000 for each alleged violation, as well as attorney fees and costs.[19] The Act also authorizes employees, customers, and invitees to file suit for an alleged violation and seek the same remedies available to the Attorney General.[20]

The Act also contains broad employment anti-discrimination provisions. In this case, Mr. Ransom sued Guardian for violating the anti-discrimination provision set forth in the Act, West Virginia Code § 61-7-14(d)(3), which provides, in relevant part, that: "No employer may condition employment upon . . . (B) An agreement with an employee or a prospective employee prohibiting that natural person from keeping a legal firearm locked inside or locked to a motor vehicle in a parking lot when the firearm is kept for lawful purposes." Guardian's defense pertains to the general provision making it unlawful

---

[18] *Id*. at § 61-7-14(d)(2). This section of the Act also provides "[t]hat a search of a motor vehicle in a parking lot to ascertain the presence of a firearm within that motor vehicle may only be conducted by on-duty, law enforcement personnel, in accordance with statutory and constitutional protections." *Id*.

[19] *Id*. at § 61-7-14(f).

[20] *Id*.

9

to prohibit employees from possessing firearms in locked vehicles which are "out of view," § 61-7-14(d)(1), referenced above. As a result, the parties devote much of their briefing debating whether Mr. Ransom's firearm was "out of view" within the meaning of § 61-7-14(d)(1),[21] and whether that section conflicts with § 61-7-14(d)(3), dealing with conditions of employment.[22] As we explain below, these subsections of the Act do not conflict but are directed at different protections of lawful gun owners' rights; one deals with firearm possession on private property and the other deals with conditions of employment irrespective of actual possession.

Mr. Ransom argues that if West Virginia Code § 61-7-14(d)(1) conflicts with § 61-7-14(d)(3), then subsection (d)(3) controls as it is the more specific provision dealing with employment.[23] As a result of Guardian's admission that it fired him for violation of the workplace policy, Mr. Ransom argues that it unequivocally violated (d)(3). As to the

---

[21] Because his car had dark tinted windows and a black interior and the firearm was partially covered, Mr. Ransom submits that someone would have had to press his face against the car's window to see it. Guardian responds that Mr. Ransom's firearm was obviously not out of view because his coworker saw it and reported it to members of management, and they saw it too.

[22] The parties agree on one point: the issue of whether a violation of the Act constitutes a violation of substantial public policy sufficient to support a *Harless* claim is not before this Court because the circuit court did not address it.

[23] *See Tillis v. Wright*, 217 W. Va. 722, 728, 619 S.E.2d 235, 241 (2005) ("The general rule of statutory construction requires that a specific statute be given preference over a general statute relating to the same subject matter where the two cannot be reconciled.") (quoting Syl. Pt. 1, *UMWA ex rel. Trumka v. Kingdom*, 174 W. Va. 330, 325 S.E.2d 120 (1984)).

10

operation of (d)(1) in this context, he contends that after someone reported seeing a firearm in his car, Guardian had the right to ask him to move the firearm out of view or take it to his home to become compliant with the statute. Because his actions brought him in compliance with (d)(1), Mr. Ransom contends that (d)(3) then prevented Guardian from firing him.

Guardian responds that West Virginia Code § 61-7-14(d)(1) stands for the proposition that an employee's firearm must be out of view in the car before he can enter his employer's parking lot and maintain possession of the firearm on company property. When the firearm is in plain view or otherwise in violation of (d)(1), Guardian posits that an employer has the right to take disciplinary action, including terminating employment irrespective of the language of (d)(3).[24] Guardian maintains that Mr. Ransom misinterprets § 61-7-14(d)(3), as it speaks to an "agreement" with an employee, and no such "agreement" has been alleged or exists because he was an at-will employee. Guardian now argues, for the first time—irrespective of its admission that he was fired for failure to comply with the

---

[24] In support of its argument that Mr. Ransom was fired because the firearm was not out of view, Guardian relies on his deposition testimony where Mr. Ransom said, "I was told by the administrator if I would have parked anywhere else, it would have not been any problem. But because I had parked in that smoking area, people commonly would, you know, maybe lean against your car or things like that . . . [and] they may have seen it." Mr. Ransom counters that no one from Guardian said anything about the firearm being in open view, and that Guardian relies on inadmissible hearsay. *See Aluise v. Nationwide Mut. Fire Ins. Co.*, 218 W. Va. 498, 504, 625 S.E.2d 260, 266 (2005) (stating hearsay evidence is not admissible for summary judgment purposes, unless it falls within one of the exceptions specified in the West Virginia Rules of Evidence).

workplace policy—that it did not condition Mr. Ransom's employment on any agreement that he would refrain from keeping his firearm locked inside or locked to his car while on its parking lot.

Because a civil action for a violation of the rights protected under the Act is created entirely by statute, our analysis is guided by the rules of statutory construction. "The primary object in construing a statute is to ascertain and give effect to the intent of the Legislature."[25] And when the language of a statute is clear, courts must apply the relevant law according to its "unvarnished meaning, without any judicial embroidery."[26] In other words, the plain meaning of the statute is to be applied without interpretation by the Court: "Where the language of a statute is free from ambiguity, its plain meaning is to be accepted and applied without resort to interpretation."[27]

The language of the statute at issue here is plain, so we apply it as written and hold that under The Business Liability Protection Act, West Virginia Code § 61-7-14(d)(3) (2018), no employer may condition employment on an agreement with an employee or a prospective employee prohibiting him from keeping a legal firearm locked

---

[25] Syl. pt. 1, *Smith v. State Workmen's Comp. Comm'r*, 159 W. Va. 108, 219 S.E.2d 361 (1975).

[26] Syl. Pt. 3, in part, *West Virginia Health Care Cost Review Auth. v. Boone Mem'l Hosp.*, 196 W. Va. 326, 472 S.E.2d 411 (1996).

[27] Syl. Pt. 2, *Crockett v. Andrews*, 153 W. Va. 714, 172 S.E.2d 384 (1970).

12

inside or locked to a motor vehicle in a parking lot when the firearm is kept for lawful purposes.

There can be no genuine debate that Guardian's firearm policy—which prohibits employees from lawfully possessing a firearm on company property even when they comply with the conditions of § 61-7-14(d)(1)—is inconsistent with the possessory rights afforded to lawful gun owners under the Act. But the facts developed so far leave questions of material fact regarding whether Guardian violated the provision of the Act that Mr. Ransom relies on, § 61-7-14(d)(3)—in other words, whether Mr. Ransom's initial hire with Guardian, or continued employment there following the incident in question, was conditioned on him agreeing to comply with its firearm policy—or whether Guardian was attempting to vindicate what it believed was its right to administer employment-related penalties for Mr. Ransom's alleged violation of (d)(1).

As explained above, the Legislature enacted the Act with a general purpose and intent to protect gun owners' possessory rights on the private property of others as well as their conditions of employment. Each part of the Act should be considered in connection with every other part and applied in a sense which harmonizes with the general purpose of the legislation.[28] For this reason, the circuit court erred in concluding that West Virginia

---

[28] *See e.g.*, *State ex rel. Holbert v. Robinson*, 134 W. Va. 524, 531, 59 S.E.2d 884, 889 (1950) ("A statute is enacted as a whole with a general purpose and intent, and each part should be considered in connection with every other part to produce a harmonious (continued . . .)

13

Code §§ 61-7-14(d)(1) and 61-7-14(d)(3) conflict with one another when (d)(1) deals with *actual* firearm possession on private property and (d)(3) deals with conditions of employment *irrespective* of actual possession. As explained above, an employer violates § 61-7-14(d)(3) by simply conditioning an employee's or prospective employee's employment on an agreement prohibiting him "from keeping a legal firearm locked inside or locked to a motor vehicle in a parking lot when the firearm is kept for lawful purposes."[29] Because material questions of fact remain on this issue, we reverse the order granting summary judgment in Guardian's favor and remand this case for further proceedings.

## IV. CONCLUSION

For the reasons set out above, we reverse the January 10, 2022, order of the Circuit Court of Marion County and remand this case for further proceedings.

Reversed and Remanded.

---

whole and words and clauses must be read in a sense which harmonizes with the subject matter and the general purpose of the statute.").

[29] *Id.*